**STATE of Tennessee, Appellee,**

v.

**David KEEN, Appellant.**

Supreme Court of Tennessee.

May 23, 1994.

Opinion Granting Rehearing
and Remanding for Sentencing
July 8, 1996.

Charles W. Burson, Attorney General and Reporter, Joel Perry, Assistant Attorney General, Nashville, for Appellee.

W. Mark Ward, Memphis, Brock Mehler, Nashville, for Appellant.

### *OPINION*

O'BRIEN, Justice.

Defendant, David M. Keen, entered a plea of guilty to murder in the first degree and perpetration of rape, and to a charge of aggravated rape. The cause was submitted to a jury for consideration of the evidence for sentencing. Upon completion of their deliberation they unanimously found (1) the murder was committed against a person less than 12 years of age and the defendant was 18 years of age or older; (2) the murder was especially heinous, atrocious, or cruel in that it involved torture, or depravity of mind; (3) the murder was committed while the defendant was engaged in committing or attempting to commit rape. The jury unanimously found there were no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstances and that the punishment for the offense should be death. Defendant was sentenced for aggra-

vated rape as a standard, Range I offender, to 20 years imprisonment consecutive to the murder sentence.

Defendant has raised 17 issues for error, several of which are divided into sub-issues. He acknowledges the court has previously rejected much of his argument, but has raised the issues here for various reasons including the purpose of preserving them for later review. The Court has concluded a resentencing hearing is required due to error in the jury instructions, therefore we have addressed each of the issues raised as a measure to assist the trial judge at resentencing.

Some of the issues raised relate to the sufficiency of the evidence which in summary shows that defendant pled guilty to the aggravated rape and felony murder of 8 year old Ashley Nicole "Nicki" Read. At the time of the offense he was 27 years of age. He was the boyfriend of Nicki's mother, Deborah Read, and lived with Deborah, her four children, Deborah's father and his wife, in a trailer park in Millington, Tennessee. On the evening of 17 March 1990, defendant and Deborah joined her father and his wife at the VFW Club in West Memphis, Arkansas, to play bingo. At approximately 5:00 p.m., defendant volunteered to return to Millington to check on Deborah's children. He used the Chevrolet automobile owned by Mr. Jesse Wilson, Deborah's father, to make the trip. He returned to the VFW Club about 8:00 p.m. The four of them returned to Millington sometime after 10:30 p.m. Nicki, who was supposed to be spending the night with a friend, did not come home the next morning. After a search the family concluded she was missing and reported her disappearance to the police. While Deborah and defendant were at the police station, Mr. Wilson discovered Nicki's underpants lying on the floorboard on the front passenger side of his car. He also found missing a green blanket which he usually kept in the automobile. Later that night defendant was asked to come to the police station to be interviewed. Shortly after 1:00 a.m. he confessed to the police that he had thrown Nicki's body into the water at a boat ramp on the north end of Mud Island, in Memphis, where the Wolf River flows into the Mississippi. Following his directions rescue workers found the child's nude body tied up in the blanket missing from her grandfather's car. Defendant gave conflicting statements to the police describing the circumstances of the rape and homicide. He also testified at trial about what happened but was not completely clear about details, or the order in which the events had occurred. He related circumstances of the rape during his testimony indicating he did not intentionally kill her. Essentially, his testimony was that, while holding his hand over her mouth, he raped the victim until she defecated. He wrapped a shoe string about her neck, holding it with both hands, until it cut a groove into her neck. At some point she stopped breathing. After he had finished the assault he wrapped the child's nude body in the green blanket and dropped her into the river.

An autopsy indicated the cause of death was ligature strangulation, consistent with the physical evidence and defendant's testimony relative to twisting the shoelace around the victim's neck. The medical examiner testified that the child would have fallen unconscious within seconds and died within minutes. Abrasions, tears and bruises were found about her vaginal area. Sperm heads were found in her vagina. The medical examination did not disclose whether she had been raped before or after strangulation. However, examination of the heart disclosed that the victim had inhaled some water before she died.

In mitigation defendant offered his own testimony and that of his brother, his sister, his adoptive parents, and a clinical psychologist. The substance of their testimony was to relate the conduct of defendant in the rape and homicide of the victim to be the result of his childhood abuse. His siblings testified that their father was physically and emotionally abusive of his children and sexually molested at least one of his daughters. He was a parole violator and kept the family constantly on the move to evade the law. The children were malnourished and were neglected and abandoned by their parents when defendant was about two years of age. After a period of residency in various foster homes where he was physically and sexually

abused, when defendant was about four and one-half years old he and his brother Allen were adopted by a couple who gave them a loving and stable family. His adoptive parents testified that he was a poor student and as an adolescent he drank, smoked marijuana, stole, and ran away from home.

Dr. John Hutson, a clinical psychologist, who had evaluated the defendant testified that he had not bonded with his parents and had developed a "shell" around himself, within which he held back all the anger of his past experiences until he "exploded." He diagnosed defendant as suffering from post-traumatic stress disorder, dependent personality disorder, pedophilia, and attention deficit disorder with hyperactivity in childhood. He opined that, at the time of the offense, defendant was under the influence of mental and emotional problems substantially affecting his judgment. On cross-examination Dr. Hutson testified that the results of defendant's testing indicated he may have been faking his answers in an attempt at manipulation. He also stated that the same results may have also indicated defendant was extremely upset when he took the test a few days after his arrest and that he may have been suicidal about that time.

There was also mitigating testimony from county jail personnel that defendant had been a good prisoner and caused no problems during his incarceration. Defendant's pastor testified that defendant was truly remorseful, accepted full responsibility for what he had done, and was sincere in his religious faith.

We first consider the issue concerning the trial judge's instructions to the jury on aggravating and mitigating circumstances. Defendant has asserted a number of subissues relating to purported errors in the trial judges instructions and the insufficiency or inadequacy of the instructions. On the other hand, the State has responded that defendant's objections regarding the penalty phase instructions have been waived. Defendant counters that issues regarding the reliability of a sentence of death and whether it was imposed in an arbitrary fashion are of constitutional dimension and not subject to usual rules of waiver.

■ We perceive the possibility of another extremely serious problem in this case. Among the issues raised are that the jury was instructed under the pre-November 1989 sentencing statute. Chapter 591 of the Public Acts of 1989 became effective on 1 November 1989. The offenses in this case occurred in March 1990. The sentencing hearing was held in February, 1991. The jury was instructed under the provisions of the pre–1989 statutes. This fact is raised by defendant as reversible error. Defense counsel raised no objection at trial through any of these proceedings, and, additionally, failed to raise the issue on motion for new trial, thus indicating his acquiescence in the procedure. The issue is raised in this Court as reversible error. The record clearly shows that defendant was represented by a member of the public defender's staff at trial and by a different member of that State agency on appeal. It is not our intention to cast any reflection on the character or legal ability of any member of the public defender's staff, or any other officers of the court participating in the trial. However, it creates an anomalous situation, which the Court looks upon with great concern, for appellate counsel to charge trial error to another member of his same office. Nonetheless, any error in this regard will be eliminated by a rehearing.

Defendant alleges three (3) ways in which the trial judge's instructions on mitigating circumstances violated his constitutional rights and the Tennessee Death Penalty Statute arguing that a capital sentencer must be able to consider and give effect to all relevant mitigating evidence offered. He says first the trial judge delivered instructions on only three (3) of the eight (8) statutory mitigating circumstances included in T.C.A. § 39–2–203(j), [T.C.A. § 39–13–204(j) ]:

(1) Defendant has no significant history of prior criminal activity;

(2) The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;

(3) The capacity of the defendant to appreciate the wrongfulness of his conduct to the requirements of the law was substan-

tially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment.

The judge also instructed the jury, generally in accordance with sub-paragraph 9 of T.C.A. § 39-13-204(j) that "in addition, any aspect of the defendant's character or record or any circumstances of the offense favorable to the defendant shown by the proof in the case may be considered."

The trial judge then went on to instruct the jury in accordance with T.C.A. § 39-13-204, the statute in effect at the time of defendant's sentencing hearing:

If you unanimously determine that at least one statutory aggravating circumstance or several statutory aggravating circumstances have been proved by the State, beyond a reasonable doubt, and said circumstance or circumstances have been proven by the State to outweigh any mitigating circumstances, the sentence shall be death . . . .

If you unanimously determine that no statutory aggravating circumstance has been proved by the State beyond a reasonable doubt; or if the jury unanimously determined that a statutory aggravating circumstance or circumstances have been proved by the State beyond a reasonable doubt but that said statutory aggravating circumstance or circumstances have not been proven by the State to outweigh any mitigating circumstance or circumstances, the sentence shall be life imprisonment . . . . The jury should in no case allow mere sympathy or prejudice solely to influence their verdict but should look to the law and all the facts and circumstances proven in the evidence to determine their verdict. You should render your verdict with absolute fairness and impartiality as you think truth and justice dictate.

Defendant objects to what is referred to as the general catchall phraseology of "any aspect of the defendant's *character* or *record* or any circumstances of the offense *favorable* to the defendant." He further complains the Court did not define what a mitigating circumstance was. He submits that the charge given by the trial judge as to the applicable mitigation was erroneous and insufficient and created a reasonable likelihood that the jury applied the instructions in a way that prevented them from considering the mitigating circumstances propounded by him, including his acknowledgement of the seriousness of the offense, his acceptance of responsibility and remorse for his actions, proof of his abandonment and neglect as a child and evidence of his dysfunctional family in which he was physically, sexually and emotionally abused and deprived. The proof that he suffered from a lack of bonding with his parents and the testimony of a clinical psychologist relative to his post-traumatic stress disorder resulting from the trauma which started at birth, dependent personality disorder, pedophilia, and attention deficit disorder with hyperactivity in childhood.

■ Defendant has placed a strained construction on the instructions delivered by the trial court to the jury and his argument that the trial judge was required to define the term "mitigating circumstance" is totally without merit. This Court has held unequivocally that where a trial judge has instructed the jury that they may consider any aspect of the defendant's character or record or any of the circumstances of the defense favorable to the defendant which is supported by the evidence there is no requirement that he must give the jurors a definition of the term "mitigating circumstances." *State v. Wright,* 756 S.W.2d 669, 674 (Tenn.1988). The same is true of the words character, record, or favorable and other words of similar nature which are in common usage in everyday conversation and easily understandable by the jury. Defendant refers to the reasonable likelihood standard enunciated in *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). In that case the Court said,

". . . We think the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence. Although a defendant need not establish that the jury was more likely than not to have been impermissibly inhib-

ited by the instruction, a capital sentencing proceeding is not inconsistent with the Eighth Amendment if there is only a possibility of such an inhibition.

"This 'reasonable likelihood' standard, we think, better accommodates the concerns of finality and accuracy than does a standard which makes the inquiry dependent on how a single hypothetical 'reasonable' juror could or might have interpreted the instruction. There is of course, a strong policy in favor of accurate determination of the appropriate sentence in a capital case, but there is an equally strong policy against retrials years after the first trial where the claimed error amounts to no more than speculation. Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with common-sense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting."

■ We have examined the evidence and the instructions and do not see that there is the remotest likelihood that the jurors in this case interpreted the trial court's instructions to prevent consideration of mitigating evidence of defendant's background and character.

■ The trial judge concluded his instructions on mitigating circumstances with the admonition that the jury should consider any aspect of the defendant's character or record or any circumstances of the offense favorable to the defendant shown by the proof in the case. Defendant insists that the trial judge should have charged the statutory language of T.C.A. § 39–13–204(j)(9), that the jury should have considered "any other mitigating factor which is raised by the evidence produced by either the prosecution or defense at either the guilt or sentencing hearing." Jury instructions should conform to the statute. However, the instruction as given satisfies the requirement that a sentencer be allowed to consider relevant mitigating circumstances and did not pose a reasonable likelihood that jurors would interpret instructions to pre-

clude consideration of mitigating evidence of defendant's background and character. *See Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and *Boyde v. California*, supra.

■ The foregoing analysis applies equally to defendant's complaint that the qualifiers "extreme" and "substantially" limited the jury's consideration of his mitigating evidence. *See Boyde*, supra, 494 U.S. at 380–81, 110 S.Ct. at 1198.

Defendant contends the trial judge erred in refusing to instruct the jury on non-statutory mitigating circumstances. In that regard defendant submitted a request for special jury instructions listing 12 separate proposed instructions. The State objects on the basis that all of the things listed were factual conclusions, which were a function of the jury and not properly to be considered as mitigating factors. The trial judge denied the request expressing his concern that if he did list those non-statutory things or a part of them, that it could preclude the jury from considering other circumstances. At the outset we must say that we generally agree with the theory of the State that the various matters submitted as mitigating circumstances were evidentiary matters which would of necessity have to be found by the jury before they could be considered as mitigating circumstances. Beyond that, the trial judge instructed the jury to consider any aspect of the defendant's character or record or any circumstances of the offense favorable to the defendant shown by the proof in the case.

In *Blystone*, supra, the United States Supreme Court considered a death penalty statute nearly identical to that used in the State of Tennessee. At sentencing, the jury found one aggravating circumstance present—that petitioner committed a killing while in the perpetration of a robbery. No mitigating circumstances were found. The petitioner contended that the mandatory imposition of death in his situation violated the Eighth Amendment requirement of individualized sentencing since the jury was precluded from considering whether the severity of this aggravating circumstance warranted the death sentence. The Court rejected the argument

saying, "The presence of aggravating circumstances serves the purpose of limiting the class of death eligible defendants, and the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by a jury." *See Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988). "The use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion." The requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence. In petitioner's case the jury was specifically instructed to consider as mitigating evidence, any "matter concerning the character or record of the defendant, or the circumstances of his offense." ... This was sufficient to satisfy the dictates of the Eighth Amendment.

■ In *Blystone* the defendant also maintained that the trial judge foreclosed the jury's consideration of certain mitigating circumstances by instructing them on the statutory circumstances contained in the Pennsylvania Code. These instructions were, in substance the same as those instructed to the jury in this case. The Court also rejected this complaint, saying, "the judge at petitioner's trial made clear to the jury that these were merely items they could consider, and that it was also entitled to consider 'any other mitigating matter concerning the character or record of the defendant, or the circumstances of his offense.' ... This instruction fully complied with the requirements of *Lockett* and *Penry*." We hold that neither the United States Constitution nor the Tennessee Constitution requires the trial judge to read or submit non-statutory mitigating circumstances to the jury. Insofar as the statute is concerned it must be considered in its entirety. T.C.A. § 39–13–204(c) provides in pertinent part:

(c) In the sentencing proceeding, evidence may be presented as to any matter that the *court deems relevant to the punishment* and may include, ... Any such evidence which the court deems to have probative value on the issue of punishment ...

Subsection (e) sets out that the trial judge shall include in the instructions for the jury to weigh and consider any of the statutory aggravating circumstances set forth in subsection (i) *which may be raised by the evidence.* A 1989 amendment to the statute added the following:

No distinction shall be made between mitigating circumstances as set forth in subsection (j) and those otherwise raised by the evidence which are specifically requested by either the State or the defense to be instructed to the jury. These instructions and the manner of arriving at the sentence shall be given in the oral charge and in writing to the jury for its deliberations.

■ The trial judge instructed the jury in accordance with the statute that, "No distinction shall be made between mitigating circumstances one (1) through eight (8) and those otherwise raised by the evidence which are specifically requested by either the State or defense." We are of the opinion that the 1992 Tennessee Pattern Jury Instructions, Criminal § 7.04 (3rd Ed.1992), correctly interprets the statute and the trial judge's failure to include phraseology of the statute in his instructions to the jury did not amount to reversible error.

■ The trial judge declined to instruct the jury on the non-statutory mitigating circumstances because of his concern that if he did list the non-statutory things or a part of them the jury might reach the conclusion that was all they could consider, which would work to the defendant's disadvantage. There are strong legal precedents for this view, particularly in the light of *Blystone*, supra and *Boyde*, supra. *See Booth v. State*, 327 Md. 142, 608 A.2d 162 (1992), cert. denied, 506 U.S. 988, 113 S.Ct. 500, 121 L.Ed.2d 437 (1992). In *People v. Gosier*, 145 Ill.2d 127, 159, 163 Ill.Dec. 823, 839, 582 N.E.2d 89, 105 (1991), cert. denied, 504 U.S. 987, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992), the Illinois Supreme Court, citing from its decision in *People v. Spreitzer*, 123 Ill.2d 1, 121 Ill. Dec. 224, 525 N.E.2d 30 (1988), stated the issue thusly:

[w]hile the number of such possible mitigating factors is not infinite, it is certainly

extremely large. Any listing of such factors which is presented to the jury will always be open to the objections that it is incomplete and that it will tend to mislead the jury into thinking that they must limit themselves to the factors actually listed. Rather than requiring court and counsel to present the jury with a detailed laundry list of unstatutory mitigation, we think it better to allow the court to instruct only on specific instances of statutory mitigation, while instructing the jury that they may consider any other non-statutory mitigating factor.

We consider that the appropriate view to take of the matter and conclude the trial judge was correct in denying the requested instruction.

It is defendant's contention that the trial court's denial of his special request on non-statutory mitigating circumstances raised a reasonable likelihood that the jury applied its instructions as given in a way that prevented it from considering and giving effect to his mitigating evidence. To paraphrase *Boyde,* supra, defendant had an ample opportunity to present to the jury all of the available evidence relating to his acknowledgement of the offense, his remorse, and his disadvantaged and abusive childhood background, as well as to argue these circumstances to the jury during the course of the sentencing hearing. There is no reason to believe that reasonable jurors would resist the view that in an appropriate case such evidence would counsel imposition of a sentence less than death. The jury was directed to consider *any aspect of the defendant's character* or record or *any circumstances* of the offense favorable to the defendant shown by the proof in the case. This certainly includes a defendant's background and character. The trial judge instructed the jury to consider other factors including the absence of any significant history of prior criminal activity on the part of defendant; that the murder was committed while defendant was under the influence of extreme mental or emotional disturbance; and the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantial-

ly impaired as the result of mental disease or defect or intoxication, insufficient to establish a defense to the crime but which substantially affected his judgment. The catchall instruction delivered to the jury was a variation of T.C.A. § 39–13–204(j)(9). Viewed together with the other instructions heard by the jury it is highly unlikely that any juror would arrive at any interpretation precluding consideration of all non-crime-related evidence. We reject defendant's contentions.

Defendant submits that the trial judge erred in failing to instruct the jury that the reasonable doubt standard applied in its weighing of the aggravating circumstances against the mitigating circumstances and it was error to instruct the jury that the sentence should be death if it found no mitigating circumstance sufficiently substantial to outweigh the statutory aggravating circumstances.

■ We note at the outset that no objection was made at trial on these issues nor were they raised on a motion for new trial so as to enable the trial judge to correct any error which may have existed. Defendant's argument is that the trial judge mistakenly instructed the jury in the language of the former death penalty statute rather than the statute in effect at the time of his trial. His first complaint is that T.C.A. § 39–13–204(f) and (g) provide that in order to impose the death penalty the jury must specifically find that the State has proven *beyond a reasonable doubt* that the aggravating circumstances outweigh the mitigating circumstances. Prior to the 1989 amendment subsections (f) and (g) respectively held:

(f) If the jury unanimously determines that no statutory aggravating circumstances have been proved by the State *beyond a reasonable doubt,* or if the jury unanimously determines that a statutory aggravating circumstance or circumstances have been proved by the State *beyond a reasonable doubt* but that said circumstance or circumstances are *outweighed* by one or more mitigating circumstances, the sentence shall be life imprisonment.

(g) If the jury unanimously determines that at least one (1) statutory aggravating circumstance or several statutory aggravating circumstances have been proved by the State *beyond a reasonable doubt* and said circumstance or circumstances are not *outweighed* by any mitigating circumstances, the sentence shall be death.

(2) Signify that there were no mitigating circumstances sufficiently substantial to *outweigh* the statutory aggravating circumstance or circumstances so found. . . . (Emphasis supplied).

The 1989 amendments required that any aggravating circumstances proven by the State beyond a reasonable doubt must be proven to outweigh mitigating circumstances "beyond a reasonable doubt." We conclude resentencing is required by the failure of the trial judge to properly include in the jury instructions that aggravating circumstances must be proven to outweigh any mitigating circumstances "beyond a reasonable doubt." *See State v. Stephenson,* 878 S.W.2d 530 (Tenn.1994).

 Defendant says the trial court erred in instructing the jury on aggravating circumstances under the provision of the old statute which provided that the murder was especially heinous, atrocious, or cruel in that it involved "torture or depravity of mind," instead of that it involved "torture or serious physical abuse beyond that necessary to produce death," as delineated in the revised 1989 version.

The Court also finds resentencing mandated by the erroneous "heinous, atrocious and cruel" aggravating circumstance instruction.

 Defendant complains of prosecutorial misconduct in closing argument. His first contention in this regard is that the State's attorney quoted from the Bible and interjected religious law as an additional factor for the jury's consideration. The State claims waiver for failure of counsel to make a contemporaneous objection, or to include this issue in the motion for new trial. This constitutes waiver. However, because this is a capital case, we have examined the record, and find that the comments complained of do not reach constitutional status. The com-

ment was trivial, at the most, in relationship to the remainder of the argument. We observe that defense counsel was approaching a biblical reference in his argument which was objected to by the State's counsel. Closing argument must be temperate, must be predicated on evidence introduced during the trial of a case, and must be pertinent to the issues being tried. *State v. Sutton,* 562 S.W.2d 820 (Tenn.1978). In *Kirkendoll v. State,* 198 Tenn. 497, 281 S.W.2d 243 (1955), the attorney general referred to the Mosaic Law during the voir dire examination. The court commented that unless such a remark clearly would have had some effect on the verdict it did not constitute reversible error, particularly where the trial judge remonstrated with the district attorney general and told him not to use a reference of that kind again. We do not think the remarks made by counsel in this case affected the verdict. The issue is without merit.

Defendant enumerates other instances of misconduct, including what he claims to be misleading definitions of depravity of mind. The attorney general argued the statutory definitions of the words heinous, atrocious, cruel, and depravity in accordance with the statute prior to amendment Defendant's application of the facts in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) is misplaced. The jury was properly instructed in this case on the aggravating circumstance of a heinous, atrocious, or cruel murder involving torture. Each of these elements of the offense were defined for the jury giving the guidance for their determination so as to conform with the strictures of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Any effect on the jury by this erroneous argument is subject to correction on resentencing.

 The prosecutor argued that the jury had two (2) choices, "the minimum sentence and the maximum sentence," and should decide which was appropriate. He argued the defendant was asking for "the minimum sentence," which should be reserved for less serious cases. A life term is the minimum sentence for first degree murder. The prosecutor's reference to it was not improper.

We cannot agree with defendant that the State Attorney's argument in reference to the defense evidence was a gross mis-characterization of the jury's role in the sentencing hearing. Counsel argued:

The kid didn't get psychiatric treatment is the reason he killed her. Wait a minute. We're talking about 24 years ago. Where is the personal responsibility? I mean, does a bad childhood, does a rotten father mean that for the rest of your life you've got a license to rape and pillage? That is an excuse. And he can sit up here and start making excuses all he wants to. But he is making excuses.

This argument followed the evidence. In *Boyde v. California*, supra, the Court dealt with a similar issue, saying, "arguments of counsel which misstate the law are subject to objection and to correction by the court. (citations omitted). This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court. And the arguments of counsel, like the instructions of the court, must be judged in the context in which they are made." (Citations omitted).... [W]e agree with the Supreme Court of California, which was without dissent on this point, that "[a]lthough the prosecutor argued that in his view the evidence did not sufficiently mitigate Boyde's conduct, he never suggested that the background and character evidence could not be considered." Counsel, in argument, must be allowed wide latitude so long as they remain within the parameters of the evidence. We find no objectionable prosecutorial argument in this case.

Defendant objects to the State Attorney's argument on deterrence, referring to our case of *State v. Irick*, 762 S.W.2d 121, 131 (Tenn.1988). The State's Attorney said, "Punishment's suppose to be a deterrent, stop people from committing crimes. We know it would stop the defendant to give him the death penalty ... it makes sense. We talk about deterrence." In *Irick*, supra, we said, "We have not been directed to any case, nor does the Court know of one, specifically prohibiting argument on the issue of deterrence in a capital case." Defendant has not provided us with any such reference in this case. In our discussion on the issue in *Irick*, we said, "unquestionably, any argument based on general deterrence to others has no application to either aggravating or mitigating circumstances. Argument of this nature is inappropriate at a sentencing hearing. Deterrence of the defendant at trial by imposition of the death penalty is obvious and it would seem, redundant.... A court reviewing the propriety of argument in a capital sentencing proceeding must determine whether the prosecutor's comments affected the sentencing decision. If the Court cannot say the comments had no effect on the sentencing, then the jury's decision does not meet the standard of reliability required by the Eighth Amendment. *Caldwell v. Mississippi*, 472 U.S. 320, [341–42] 105 S.Ct. 2633, 2646, 86 L.Ed.2d 231 (1985). We do not believe the State's argument reached the level of reversible error. The comments were moderate at most. The trial court correctly and positively instructed the jury in reference to aggravating and mitigating circumstances." In this case the defendant submitted a guilty plea. The evidence was devastating against him and was supplemented by his own confession. There is no merit to this complaint.

Defendant says the trial judge erred in failing to specifically instruct the jury that it was not to consider the issue of parole and in denying a new trial based on the jury's improper consideration of parole.

The trial judge denied a pre-trial motion filed by defendant for an instruction to the jury that for purposes of its deliberations, it was to presume that a life sentence or a death sentence would be carried out in accordance with the law of the State. During its deliberations, the jury sent the trial judge a note asking the question, "If he is given life, can he be paroled?" After a bench conference with counsel the trial judge concluded that it was a question outside the purview of the jury. He instructed them as follows:

Ladies and gentlemen, let me say this to you, we've gotten the question here from one of the jurors or maybe from all of you.

I do not know. That question cannot be answered. As we had earlier another question during the trial of the case, you must deliberate on the evidence that you heard and on the law as I charged it to you. And that's the only thing I can tell you at this time.

On the motion for new trial defendant submitted the affidavit of one of the jurors to the effect that the amount of time a person would serve on a life sentence was considered by him and other jurors in reaching their verdict. We are constrained to say that question would not be an unusual one for a jury to consider and debate in reaching a verdict in a capital case. The affidavit does not say that the jury reached the verdict they did as a result of this consideration. In the affidavit filed by the juror he listed some six (6) reasons why he was confused during the deliberation or did not understand what his duties were. Rule 606 of the Tennessee Rules of Evidence says that upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, or whether any outside influence was improperly brought to bear upon any juror, ... nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes. In *State v. Johnson*, 698 S.W.2d 631, 633 (Tenn.1985), the Court stated the preferable response to a juror's inquiry about parole is to instruct the jury to limit their deliberations to the instructions given them at the close of the evidence. The trial judge's response in this case comported with that rule. We do not find it affected the verdict in this case.

Defendant submits that under the statutory mandate of T.C.A. § 39–13–206 and the constitutional standards of "meaningful ap-

pellate review," his death sentence should be reversed because it was arbitrarily imposed, and is excessive and disproportionate.

 We reject defendant's complaint that the jury was not properly instructed, or that the sentencing determination was based on extraneous and arbitrary factors. We have previously addressed the majority of the complaints raised under this heading. His principle argument is that there is a causal relationship between his mental illness and the circumstances of the offense. He says his childhood neglect adversely affected his emotional development and as a result he suffered from pedophilia, a mental disorder whose essential feature is recurrent, intense sexual urges involving a pre-pubescent child, and from post traumatic stress disorder. He says the sentence of death is excessive and disproportionate and the Court must look behind the manner in which the crime was committed and determine the causative factors because "punishment should be directly related to the personal culpability of the defendant," citing *Penry v. Lynaugh*, 492 U.S. 302, 327, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256 (1989). In *Penry*, in holding that mental retardation is a factor that may well lessen a defendant's culpability for a capital offense, the court clearly stated that the Eighth Amendment does not preclude the execution of a mentally retarded person convicted of a capital offense simply by virtue of their mental retardation alone. It was concluded that so long as sentencers can consider and give effect to mitigating evidence of mental retardation in imposing sentence, an individualized determination of whether "death is the appropriate punishment" can be made in each particular case. In reaching this result they observed that virtually all of the states with death penalty statutes listing statutory mitigating factors include as a mitigating circumstance evidence that "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." 492 U.S. at 337, 109 S.Ct. at 2956. The jury in this case was specifically instructed to consider as a mitigating circumstance if the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance,

and if the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment. These instructions enabled the jury to express its reasoned moral response to the evidence in rendering its sentencing decision. There was no question about the defendant's intellect. Dr. John Hutson, clinical psychologist who made an evaluation of the defendant testified that he was a bright individual whose IQ estimates were anywhere from average to a high average. Defendant asserts that the various factors involving his childhood and youthful background, should somehow minimize his punishment and to say that he is so morally blameworthy and culpable as to deserve society's ultimate sanction is to overlook the obvious principles of cause and effect. He says the death sentence in this cause is excessive and disproportionate in considering the mitigating factors offered for the jury's consideration.

All of the foregoing circumstances were submitted to the jury which rejected these theories of defense. The issue is without merit.

 Defendant complains the trial judge erred in denying a special request for a jury instruction that the jury could consider sympathy based upon the evidence. The trial judge actually instructed the jury that: "the jury should in no case allow mere sympathy or prejudice solely to influence their verdict but should look to the law and all the facts and circumstances proven in the evidence to determine their verdict." There is no merit to this issue. *See California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *State v. Boyd,* supra.

Defendant claims the trial judge erred in refusing to allow individual voir dire relative to the prospective jurors exposure to pretrial publicity and the juror's beliefs and attitudes about the death penalty.

 Prior to trial defendant moved for individual voir dire. The trial judge took the motion under advisement. Voir dire was conducted collectively. At no point did defendant assert that individual voir dire was necessary in the case of any particular juror. Our review of the record indicates that very few of the prospective jurors had any knowledge of the case. Defendant's claim is that collective voir dire tainted the jury panel by exposing it to the State's repeated question about whether prospective jurors felt the death penalty was necessary in some cases. His argument is that this examination conditioned "the jurors to accept the death penalty." He also says that individual sequestered voir dire has never been afforded a capital defendant in that forum although it has been available in other areas of the State and this amounts to a denial of equal protection under both the Federal and State Constitutions. Defendant has failed to show that the prospective jurors were exposed to potentially prejudicial material or that denial of individual voir dire as to those few prospective jurors who had read or heard something about the case a year earlier created any prejudice. Individual voir dire was not mandated in this case and there was no abuse of the trial court's discretion in conducting collective voir dire. *See State v. Harris,* 839 S.W.2d 54, 65 (Tenn.1992).

 Defendant insists there was error on the part of the trial judge in excusing a prospective juror for cause. During voir dire examination the responses of the juror in question to the State's inquiry were very vague, indefinite and evasive. He indicated he did not know what he would do if faced with the sentencing decision and "couldn't give no answer." His answers to defense counsel's questions were equally ambiguous. The trial judge posed certain questions to the prospective juror to determine if he could follow the law but received equally unclear answers. Over defendant's objection the trial judge dismissed the juror saying, "certainly he has not given me an answer that I can understand." The court expressly concluded that the views represented by the juror would prevent or substantially impair the performance of his duties as a juror in accor-

dance with his instructions and his oath. We find no error in excusing the prospective juror due to his inconclusive responses in reference to the death penalty. It was clear that he either would not or could not follow the instructions of the trial court. He was therefore excusable for cause under the standard of *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). There is no claim, and the record does not show, that the jury that heard the case was not fair and impartial as the result of dismissing the juror in question.

Defendant asserts that the use of the underlying felony of rape to support both a felony murder conviction and an aggravating circumstance is unconstitutional.

Subsequent to defendant's guilty plea submission, in *State v. Middlebrooks*, 840 S.W.2d 317 (Tenn.1992), a majority of this Court held it to be unconstitutional under the Tennessee Constitution, Article I, Sec. 16, to use the felony murder aggravating circumstance, T.C.A. § 39-2-203(i)(7) (1982) or T.C.A. § 39-2-204(i)(7) (1991), to sustain imposition of the death penalty for a conviction of felony murder, although it can be used to support imposition of the death penalty for premeditated murder. It was concluded that the use of the felony murder aggravating circumstance duplicated the elements of the underlying crime and failed to narrow the class of death—eligible murders as required by Article I, Sec. 16, of the Tennessee Constitution and by the Eighth Amendment to the United States Constitution.[1]

In *State v. Howell*, 868 S.W.2d 238 (Tenn. 1993), in a scholarly opinion by Justice Anderson of this Court, we engaged in the task of determining whether, based on the facts in the case, the sentencing jury's consideration of an invalid felony murder aggravating circumstance was harmless beyond a reasonable doubt where there was one remaining aggravating circumstance considered by the jury at the sentencing hearing. The Court concluded that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor.

In this case, the jury returned three (3) aggravating circumstances against this defendant: (1) the murder was committed against a person less than 12 years of age and the defendant was 18 years of age, or older; (2) the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind; (3) the murder was committed while the defendant was engaged in committing or attempting to commit rape.

■ Although it was error under *Middlebrooks* for the jury in this case to consider the felony murder aggravating circumstance, it is not necessary that we conduct a harmless error analysis under *Howell* because remand for resentencing is required on other grounds. Obviously, on remand, the State will be unable to rely on the felony murder aggravating circumstance at the resentencing hearing. We also note that resentencing will cure any error in defining the heinous, atrocious, or cruel aggravating circumstance.

Defendant complains of denial of a motion to suppress his pretrial statements to various police officers. He says his statements were not voluntarily knowing and intelligently made and he was not properly informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He further claims he was under the influence of drugs at the time the statements were given.

The transcript of the suppression motion reveals that Captain Sammy Wilson of the Millington Police Department began working on the case of the missing child around 9:00 p.m. on 18 March 1990. After reviewing the file and police report he asked that defendant be brought to headquarters for an interview because he had been the person who had filed the missing child complaint earlier, shortly before two o'clock in the afternoon. Defendant arrived at police headquarters about 10:30 p.m. He was not a suspect at the time. The officer went over the facts with defendant and asked him to write down

---

1. The Eighth Amendment to the United States Constitution and Article I, Sec. 16, of the Tennes- see Constitution are identical in language.

what he knew. The contents of the written statement aroused the officer's suspicion because of the unusual specificity which defendant recalled the hour he returned to West Memphis on Saturday night. Defendant was advised of his *Miranda* rights and executed a written waiver at 12:20 a.m. After some interrogation which did not lead to anything incriminating against defendant, about 1:45 a.m. he was told he could go home. At that point Captain Wilson threw a box of kleenex across the desk to him and told him to take it home with him, "because you're the one going to have to live with the family, and there's probably going to be a whole lot of crying." Defendant responded, "I threw her in the river."

Defendant directed the police to the place where he had thrown the victim into the river. During this time he talked about what had happened between the victim and him. After the discovery of the body he was taken to the Memphis Police Department because the offense was committed in that jurisdiction. At 6:50 a.m. he was again advised of his rights and gave a typewritten statement. The interrogating officer indicated that no force or coercion was used and defendant acted "like he wanted to get something off of his chest."

Due to inconsistencies between his two (2) statements, together with the physical evidence which had been discovered, defendant was again advised of his rights, a written waiver was obtained and he gave another typewritten statement about 3:40 p.m. on Monday. Lt. Bobby Garner of the Memphis Police testified that no force or coercion or promises were employed in obtaining the statement. Defendant told the officers he wanted to make a statement, "to get this straight."

At the suppression hearing defendant testified that at 2:30 p.m. on Sunday, he had taken 15 Flexerils, a muscle relaxer, which made him sleepy and drowsy. According to his testimony he did not remember anything about his statements to Captain Wilson, although he recalled being taken to the police station at 10:30 p.m. The next thing he remembered was being at the Memphis Police Department and being booked and told what he was charged with.

Based on this evidence the trial court denied the motion to suppress and held that defendant had been properly informed of his rights, no duress or coercion had been applied, that due process had not been violated and that the statements had been made voluntarily.

■ A trial court's determination that a confession was given knowingly and voluntarily is binding on the appellate courts unless the defendant can show that the evidence preponderates against the trial court's ruling. *State v. O'Guinn,* 709 S.W.2d 561, 566 (Tenn.1986). We are satisfied that the evidence shows defendant's will was not overborne by any action on the part of the officers and that defendant was not coerced or compelled to incriminate himself. He was properly advised of his constitutional rights, he indicated he understood those rights, and knowingly and intelligently waived them. The issue is without merit.

Defendant also complains of a deposition of Captain Sammy Wilson which was taken because he was a member of an Armed Forces Reserve Unit and had been activated. Defendant has not been prejudiced by the trial court's decision to allow the deposition. It was not used at his trial. The issue is without merit.

Defendant has taken a scatter-gun approach saying that T.C.A. § 39–13–204 and § 39–13–206 violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Secs. 8, 9, 16 and 17; and Article II, Sec. 2 of the Tennessee Constitution. He first says the statute fails to meaningfully narrow the class of death eligible defendants. He complains of several of the aggravating circumstances set forth in T.C.A. § 39–13–204(i), beginning with the circumstance that the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution. This circumstance was neither instructed nor found in this case.

He insists that the circumstance that the murder was especially heinous, atrocious, or cruel in that it involved torture or serious

physical abuse beyond that necessary to produce death is vague and overbroad. The jury in this case was instructed under the former statute and the new rule applies only in part to defendant's case. Nonetheless, we have found that this circumstance does not fall within the strictures of *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), or *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). This Court, has repeatedly held that this circumstance was not unconstitutionally vague or overbroad. *See State v. Williams*, 690 S.W.2d 517, 529 (Tenn.1985); *State v. Barber*, 753 S.W.2d 659, 670 (Tenn.1988); *State v. Black*, 815 S.W.2d 166, 181 (Tenn. 1991).

Defendant argues that, in combination, aggravating circumstances (i)(2), (5), (6), and (7) encompass the majority of homicides committed in this State and therefore the statute as a whole does not operate to narrow the class of death eligible defendants. Defendant offers nothing in support of his assertions. In *State v. Cauthern*, 778 S.W.2d 39, 47 (Tenn. 1989), the Court rejected the argument that the statute does not meaningfully limit the class death eligible defendants.

Defendant says the death sentence is imposed capriciously and arbitrarily. This argument is predicated in part on defendant's assertion that unlimited discretion vested in the prosecutor in selecting the persons to be charged with capital murder invalidates the statutes. This assertion is invalid, *See Gregg v. Georgia*, 428 U.S. 153, 198–99, 224–26, 96 S.Ct. 2909, 2937, 2949, 49 L.Ed.2d 859 (1976). The contention that the death penalty is imposed in a discriminatory manner based on economic, racial, geographic and gender differences, is submitted without any proof on this issue in the trial court and no effort has been made to show that the decision makers in this case acted with discriminatory purpose. *See McCleskey v. Kemp*, 481 U.S. 279, 290–91, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262 (1987).

Defendant argues that the failure to mandate individual sequestered voir dire in all capital cases renders the death penalty arbitrary and capricious and violates guarantees of equal protection and the Sixth Amendment right to a fair and impartial jury. He argues for some standardized process for voir dire in all capital cases and says that death qualification of juries yields a conviction-prone jury. This argument has been repeatedly rejected. *See State v. Workman*, 667 S.W.2d 44, 49 (Tenn.1984); *State v. McKay*, 680 S.W.2d 447, 450, 453–455 (Tenn.1984); *State v. Teel*, 793 S.W.2d 236, 246 (Tenn.1990).

Defendant says the prohibition from addressing popular misconceptions commonly held among jurors such as parole eligibility, cost of incarceration and execution, general deterrence, and method of execution violates the federal constitution. He offers vague and theoretical bases with selected excerpts from legal writings and cases from other jurisdictions in support of his argument. This Court has previously held that the factors defendant claims should be presented to the jury are matters properly reserved for the Legislature. *See State v. Johnson*, 632 S.W.2d 542, 547, 548 (Tenn. 1982); *State v. Thompson*, 768 S.W.2d 239, 249 (Tenn.1989); *State v. Wilcoxson*, 772 S.W.2d 33, 39, 40 (Tenn.1989). Defendant complains that the jury is instructed that its verdict must be unanimous and is not informed of the effect of its failure to agree and this is a violation of due process injecting arbitrariness into the sentencing process. This argument is without merit. *State v. King*, 718 S.W.2d 241, 249, 250 (Tenn.1986); *State v. Barber*, 753 S.W.2d 659, 671 (Tenn. 1988); *State v. Taylor*, 771 S.W.2d 387, 399 (Tenn.1989).

An issue was raised to the effect that requiring the jury unanimously to agree that aggravating circumstances do not outweigh mitigating circumstances before they can sentence a defendant to life does not allow jurors to give effect to mitigating evidence. Defendant relies on *McKoy v. North Carolina*, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) and *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), for this assertion. It was further argued that there is a reasonable likelihood that jurors understand instructions based on Tennessee statutes to require that they must unanimously agree on the existence of any mitigating circumstances. This Court has

held that the Tennessee statute does not violate the principles of *McKoy* and *Mills*. *See State v. Thompson,* 768 S.W.2d 239, 250 (Tenn.1989); *State v. Boyd,* 797 S.W.2d 589, 597 (Tenn.1990); *State v. Harris,* 839 S.W.2d 54, 74 (Tenn.1992).

Defendant says that in an effort to meet the requirements of *Furman* and *Gregg,* supra, that the sentencers discretion be "channeled," the Tennessee Legislature has created a mechanistic procedure for guiding the jury's decision making and by the failure to inform the jury that the purpose of this apparatus is to determine whether or not death is the appropriate punishment the statute sacrifices the primary constitutional concern. The argument appears to be that the entire process is rendered so unreliable that it violates the Eighth Amendment. The Tennessee Statutory Sentencing Scheme has repeatedly been held to be constitutional. *See State v. Black,* supra; *State v. Thompson,* supra.

Defendant repeats his previous argument that an accused is entitled to present the final argument to the jury before their consideration of the evidence. This argument is without merit. This Court has held that the statute does not place the burden of proof on a defendant to avoid death where, as here, the defendant has been convicted of felony murder. *See State v. Middlebrooks,* supra. Allowing the State to make final closing argument at sentencing does not deprive the defendant of due process. *State v. House,* 743 S.W.2d 141, 144 (Tenn.1987); *State v. Thompson,* supra.

Defendant says electrocution is cruel and unusual punishment. In *State v. Black,* supra at 178, 179, the Court spoke to this issue noting that a majority of the Court were of the opinion that electrocution is a constitutionally permissible method of execution, and the arguments against it have been uniformly and summarily rejected by both State and federal courts, citing cases. The issue is without merit.

Defendant says that the appellate review process in death penalty cases is constitutionally inadequate in its application because (a) the appellate review process is not constitutionally meaningful; (b) the Court cannot reweigh proof due to the absence of written findings concerning mitigating circumstances; (c) the information relied upon by the Court for comparative review is inadequate and incomplete; (d) the Court's methodology is flawed and the statutorily mandated proportionality review is conducted in violation of due process and the law of the land.

Defendant's attack on the appellate review process is so generalized that a response is well nigh an impossibility. Moreover, he does not relate this complaint to the specifics of his case, therefore a case orientated response is not required. However, we have this to say, this Court has many times over found the appellate review of capital cases sufficient under our statutory scheme. In *State v. Barber,* supra, the Court made a detailed analysis of a number of cases dealing with the efficacy of Court Rule 12 to afford a meaningful and realistic comparison of cases arising under the death penalty statutes. Rule 12 requires trial judges to complete and submit to this court a report in all first degree murder cases in which life imprisonment or a sentence of death is imposed. This report was adopted to assist this Court in each case to review whether the sentence of death was imposed in an arbitrary fashion and whether it was excessive or disproportionate to the penalty imposed in similar cases. The report consists of data compiled by the trial judge concerning defendant, the trial, the victim, the aggravating and mitigating circumstances, representation of the defendant, and other general considerations which we have found helpful in our review of first degree murder cases. We have heretofore discussed the other statutory mandates which make up the required review by the Court in each case. This includes a determination of whether the sentence was imposed in any arbitrary fashion and that the evidence supports the jury's finding and that the aggravating circumstances outweigh any mitigating circumstances, as well as a determination of whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases considering both the nature of the crime and the defendant. We

have stated heretofore that the aggravating circumstances have been defined in a constitutionally sufficient sense to give meaningful guidance to the jury and have not been applied in an arbitrary manner. Nonetheless, we have looked to the issue of proportionality and are satisfied that the death sentence in this case was not wantonly and freakishly imposed and was not disproportionate to the sentences imposed in similar cases. *See State v. Irick,* 762 S.W.2d 121 (Tenn.1988), in which the defendant raped and suffocated a seven-year-old girl; *State v. Coe,* 655 S.W.2d 903 (Tenn.1983), in which the defendant kidnapped an eight-year-old girl, raped, stabbed and strangled her.

In accordance with the mandate of T.C.A. § 39–13–206, we find the sentence of death was not imposed in an arbitrary fashion; that the evidence supports the jury's findings of three (3) statutory aggravating circumstances; that the evidence supports the jury's finding that the aggravating circumstances outweigh any mitigating circumstances; that the sentence of death is neither excessive or disproportionate to the penalty imposed in similar cases considering both the nature of the crime and the defendant.

In view of the errors in the jury instructions noted heretofore the case is remanded for a new sentencing hearing.

The costs are adjudged against the defendant.

DROWOTA and ANDERSON, JJ., concur.

Separate Concurring Opinion REID, C.J.

DAUGHTREY, J., Not Participating.

REID, Justice, concurring.

I concur that the case be remanded for resentencing.

*OPINION ON PETITION TO REHEAR*
PER CURIAM.

On May 23, 1994, this Court affirmed petitioner's conviction for first-degree murder and remanded the cause for resentencing.

Subsequently, the petitioner filed a timely petition pursuant to Rule 39, Tenn.R.App.P. for a rehearing.

We grant the petition to rehear and remand the cause to the trial court for the conduct of a sentencing hearing consonant with our holding in *State v. Richard Odom,* 928 S.W.2d 18 (Tenn.1996).