ADOLPHO A. BIRCH, Jr., Justice,
dissenting.
I respectfully dissent from that portion of the majority opinion which approves of the admission of victim impact evidence during the sentencing phase of the trial. Acknowledging the precedent established in Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991) that the admission of victim impact evidence does not per se violate the Eighth Amendment to the United States Constitution, I stated in dissent in State v. Nesbit, 978 S.W.2d 872, 903 (Tenn.1998), cert. denied, — U.S. -, 119 S.Ct. 1359, — L.Ed.2d- (1999), that
Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), controls, I agree with the majority’s statement that victim impact evidence is admissible if adduced within the constraints of due process and Tenn. R. Evid. 403.
For the reasons stated below, I would hold that Article I, Section 8 of the Tennessee Constitution[1] affords a greater measure of protection than the Eighth Amendment in this regard, and I am now of the opinion that the admission of victim impact evidence is unconstitutional unless its admission is thoughtfully controlled and carefully restricted. Accordingly, I would overrule State v. Payne, 791 S.W.2d 10 (Tenn.1990), to the extent that it permits the unlimited (or vaguely limited) admission of victim impact evidence. In its place, I would impose narrow, definitive criteria similar to those established by New Jersey in State v. Muhammad, 145 N.J. 23, 678 A.2d 164 (1996). Thus, Tenn. Code Ann. § 39-13-204(c)(Supp.1998)[2] remains constitutional so long as applied to carefully control and thoughtfully restrict the admission of victim impact evidence as herein outlined.
It is indisputable among civilized societies that every death includes the potential to devastate those left behind — be they relatives, friends, or acquaintances. This has even more emphasis when human life is snuffed out by means of criminal conduct. And every person has value; every person’s death diminishes mankind.[3] But as devastating as one’s death is to family, friends, and society, that effect should not be considered in the determination of the sentence to be imposed upon the perpetrator. Thus, to place emphasis on the merit and characteristics of the victim and his or her friends and family serves only to in *23 vert the traditional statutory function that jurors perform in the sentencing process, violates evidentiary rules of relevance, and runs counter to fundamental goals of punishment.
The General Assembly, in enacting TenmCode Ann. § 39-13-204(i)(1997 & Supp.1998), has provided ample criteria for the determination of punishment. A careful review of the juror’s role in the capital sentencing scheme underscores the uncertainty that victim impact evidence insinuates into the previously refined statutory sentencing process.
Absent the admission of victim impact testimony, the jury’s sentencing decision is controlled by the statutory aggravating and mitigating factors. If the jury determines that the State has proven beyond a reasonable doubt that the relevant aggravating factors outweigh any mitigating factors, then “the sentence shall be death.” Tenn. Code Ann. § 39-13-204(g)(l)(Supp.l998)(emphasis added). But if the jury determines that the State has not proven that the relevant aggravating factors outweigh any mitigating factors, then “the jury shall, in its considered discretion, sentence the defendant either to imprisonment for life without possibility of parole or imprisonment for life.” Tenn. Code Ann. § 39-13-204(f)(2)(Supp.l998)(emphasis added). Thus, the jury’s role in capital sentencing is expressly limited to considering whether or not the aggravating factors outweigh any mitigating factors. That is why “evidence is relevant to the punishment, and thus admissible, only if it is relevant to an aggravating circumstance, or to a mitigating factor raised by the defendant.” Cozzolino v. State, 584 S.W.2d 765, 768 (Tenn.1979).
The particular “value” of the victim and the amount of emotional damage and loss suffered by surviving family and friends are not statutory aggravating factors under TenmCode Ann. § 39 — 13—204(i).[4] Additionally, one cannot even suggest that they are implicitly included in the list. None of the statutory aggravating factors differentiates between the appropriateness or inappropriateness of the death penalty based on the perceived value of the victim’s life as reflected in the testimony of the surviving friends or relatives. Thus, under our statutory scheme, how can we say that victim impact evidence is relevant to the issue of punishment? We cannot. We should not.
And yet, in apparent acknowledgment that victim impact evidence bears no relevance to any aggravating factor, the majority has heretofore condoned its admission as evidencing the “nature and circumstances of the crime.” See State v. Nesbit, 978 S.W.2d at 890. The majority attempts to limit the victim impact evidence to information which could fall within this characterization. Majority Opinion at 16; see also, State v. Nesbit, 978 S.W.2d at 891 (discussing those limits). But, even as limited by the majority, the type of evidence admissible remains wholly undefined, amorphous, and unduly prejudicial, a result prohibited by Article I, section 8 of the Tennessee Constitution.
I fully understand the motivation of those who espouse the admission of victim impact evidence in capital sentencing hearings and feel much sensitivity to the pain caused to those whose loved ones are lost in senseless killings. But in my view, because victim impact evidence is not relevant to any of the aggravating factors, or to the nature and circumstances of the crime, its use during the sentencing hearing can only serve to divert the jury’s attention from its primary role — to determine the defendant’s punishment for the crime committed considering factors of aggravation and mitigation. Such diversion demeans our capital sentencing scheme *24 and causes it to be unreliable, inaccurate, and arbitrary, and thereby unconstitutional. See Saffle v. Parks, 494 U.S. 484, 493, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990). As I stated in Nesbit,
Generally, victim impact evidence is unsettling because its use encourages the jury to quantify the value of the victim’s life and urges the finding that murder is more reprehensible if the victim is survived by a bereaved family than if the victim had no family at all.
State v. Nesbit, 978 S.W.2d at 903. This shift in focus from the crime and the defendant to the surviving family and the victim is the main criticism leveled at victim impact evidence.
By displaying grieving Mends or family members (or noting their absence) to jurors, victim impact evidence invites jurors to deem it a greater crime (and thereby deserving of greater punishment) to kill someone whose Mends or family, or both, are willing and able to testify during the sentencing phase about their grief.
Furthermore, the use of victim impact evidence tempts jurors to become mesmerized by the concept of “victimology.” Through this concept, the issue of the deceased victim’s “innocence” is silently woven into the sentencing equation. Professor Lynne N. Henderson’s description of “victimhood” is appropriate.
[T]he word “victim” has come to mean those who are preyed upon by strangers: “Victim” suggests a nonprovoking individual hit with the violence of “street crime” by a stranger. The image created is that of an elderly person robbed of her life savings, an “innocent by-stander” injured or killed during a holdup, or a brutally ravaged rape victim. ‘Victims” are not prostitutes beaten senseless by pimps or “johns,” drug addicts mugged and robbed of their fixes, gang members killed during a feud, or misde-meanants raped by cellmates.... In short, the image of the “victim” has become a blameless, pure stereotype, with whom all can identify.
“The Wrongs of Victim’s Rights,” 37 Stan. L.Rev. 937, 951 (1985).
Thus, as an extra-legal consideration, jurors are lured into determining whether the victim and his or her family fit the stereotype of “innocent victims.” If they do, this concept entices jurors to vary punishment according to the perceived “innocence” of the victim. Thus, rather than orienting punishment to the perpetrator, punishment is oriented toward the victim.
In the same vein, victim impact evidence informs the jurors about characteristics of the victim which easily translate into “value of life” assessments, driven by evidence of the victim’s accomplishments, support of family, civic endeavors, and unfulfilled dreams. These allusions to the victim’s financial condition or social attainment are simply inappropriate for the jury to consider in determining the sentence.
And finally, it has been suggested that the admission of victim impact evidence runs counter to the theory underlying the principles of punishment. Victim impact evidence provides jurors with the opportunity to vary punishment according to the degree of vengeance sought by family or Mends. And yet under our statute, the purpose of punishment is “to prevent crime and promote respect for the law.” TenmCode Ann. § 40-35-102(3)(1997). Accordingly, vengeance has no place in the determination of the appropriate sentence. Indeed, vengeance in the sentencing process breeds disparity, and disparity is an unwelcome intruder into that meticulous process.
The Supreme Court of New Jersey has devised a protocol intended to reduce the possibility that jurors will misuse victim impact evidence. State v. Muhammad, 678 A.2d at 179. Under this protocol, before victim impact evidence is deemed admissible, the following must be accomplished:
*25 The defendant should be notified prior to the commencement of the penalty phase that the State plans to introduce victim impact evidence if the defendant asserts the catch-all factor.[5] The State shall also provide the defendant with the names of the victim impact witnesses that it plans to call so that defense counsel will have an opportunity to interview the witnesses prior to their testimony. The greater the number of survivors who are permitted to present victim impact evidence, the greater the potential for the victim impact evidence to unduly prejudice the jury against the defendant. Thus, absent special circumstances, we expect that the victim impact testimony of one survivor will be adequate to provide the jury with a glimpse of each victim’s uniqueness as a human being and to help the jurors make an informed assessment of the defendant’s moral culpability and blameworthiness. Further, minors should not be permitted to present victim impact evidence except under circumstances where there are no suitable adult survivors and thus the child is the closest living relative.
Before a family member is allowed to make a victim impact statement, the trial court should ordinarily conduct a Rule 104 (formerly Rule 8) hearing, outside the presence of the jury, to make a preliminary determination as to the admissibility of the State’s proffered victim impact evidence. The witness’s testimony should be reduced to writing to enable the trial court to review the proposed statement to avoid any prejudicial content. The testimony can provide a general factual profile of the victim, including information about the victim’s family, employment, education, and interests. The testimony can describe generally the impact of the victim’s death on his or her immediate family. The testimony should be factual, not emotional, and should be free of inflammatory comments or references.
... During the preliminary hearing, the trial court should inform the victim’s family that the court will not allow a witness to testify if the person is unable to control his or her emotions. That concern should be alleviated by our requirement that the witness be permitted only to read his or her previously approved testimony. Finally, the court should also take the opportunity to remind the victim’s family that the court will not permit any testimony concerning the victim’s family members’ characterizations and opinions about the defendant, the crime, or the appropriate sentence. Finally, the trial court should inform the prosecutor that any comments about victim impact evidence in his or her summation should be strictly limited to the previously approved testimony of the witness.
Id. at 180.
These clear rules stand in sharp contrast to the thin limitations on admissibility imposed in Nesbit In Nesbit, the Court stated as follows:
Generally, victim impact evidence should be limited to information designed to show those unique characteristics which provide a brief glimpse into the life of the individual who has been killed, the contemporaneous and prospective circumstances surrounding the individual’s death, and how those circumstances financially, emotionally, psychologically or physically impacted upon members of the victim’s immediate family.... Of these types of proof, evidence regarding the emotional impact of the murder on the victim’s family should be most closely scrutinized because it poses *26 the greatest threat to due process and risk of undue prejudice, particularly if no proof is offered on the other types of victim impact.... (“It would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of particular jurors’ emotional sensitivities with our longstanding recognition that, above all, capital sentencing must be reliable, accurate, and nonarbi-trary.”) However, there is no bright-line test, and the admissibility of specific types of victim impact evidence must be determined on a case-by-case basis.
State v. Nesbit, 978 S.W.2d 872, 891 (Tenn.1998)(footnotes & citations omitted). Unlike New Jersey, this Court has not limited the number of victim impact witnesses allowed to testify; nor has it furnished guidance for using witnesses who are minors. Unlike New Jersey, this Court has not limited the victim impact testimony to factual rather than emotional information; to the contrary, it specifically allows evidence of the “emotional impact of the murder.” The mere suggestion that the trial court “closely scrutinize” emotional testimony in no way guides trial courts in implementing this suggestion. And finally, unlike New Jersey, this Court does not require that the victim impact evidence be reduced to writing and read by the witness at trial, a procedure which would go far to prevent that unconstitutional result noted in Nesbit — “allowing the fate of a defendant to turn on the vagaries of particular jurors’ emotional sensitivities.”
I would hold that the admission of victim impact evidence during the sentencing phase of a capital punishment trial is unconstitutional under Tennessee law unless admitted with precise definition and clear limitation. As heretofore stated, the adoption of procedures such as those used by the State of New Jersey would provide such definition and limitation as would ensure the constitutionality of victim impact evidence in Tennessee.
I would further hold that victim impact testimony, when admitted outside of the procedure herein espoused, requires a strict harmless error review. It is a simple matter, especially in cases with heinous facts such as the one under submission, to give short shrift to the harmless error analysis and find, based on those facts, that the error was harmless. This is easily illustrated by the language in Payne.
Once [the perpetrator’s] identity was established by the jury’s verdict, the death penalty was the only rational punishment available. Thus, the State’s argument was harmless beyond a reasonable doubt, (emphasis added.)
State v. Payne, 791 S.W.2d at 19. On the contrary, the imposition of punishment as well as any harmless error analysis should, in my view, include a painstaking, intensely thorough scrutinization of the facts and law.
In the case at bar, the victim’s daughter was allowed to testify not only about her parents’ background, but also about the suffering of her father, the fact that the murder had caused her family “problems for eleven years,” and that she would “go to [her] grave with it.” Considering this evidence, I conclude that the error more probably than not affected the judgment and prejudiced the judicial process. See Tenn. R.App. P. 36(b). To be sure, I draw no conclusions regarding the penalty imposed in this case; I would hold only that a jury should be allowed to reconsider the penalty after the procedures herein suggested have been implemented. Only by such strict limitation of this testimony can we avoid transgressing on a defendant’s constitutional right to a fair determination of punishment based on the relevant aggravating factors.
Accordingly, I would remand this case for a new sentencing hearing conducted in a manner consistent with the discussion herein contained.
*27 APPENDIX
(Excerpts from the Court of Criminal Appeals’ Decision)
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT KNOXVILLE APRIL 1997 SESSION
State of Tennessee, Appellee, v. Leonard Edward Smith, Appellant.
C.C.A. No. 03C01-9512-CC-00383
HAMBLEN COUNTY
HON. LYNN W. BROWN, JUDGE
(Death Penalty)

FOR THE APPELLANT:

J. Robert Boatright
150 Commerce Street
Kingsport, TN 37660
Larry S. Weddington
200 Seventh Street
Bristol, TN 37620

FOR THE APPELLEE:

John Knox Walkup
Attorney General and Reporter
Amy L. Tarkington
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493
H. Greely Wells, Jr.
District Attorney General
P.O. Box 526
Blountville, TN 37617-0526
OPINION FILED: October 3,1997
AFFIRMED
JOE G. RILEY, Judge
OPINION
[Case History and Evidence at Re-Sentencing Hearing Deleted]

I. SELECTIVE PROSECUTION

Defendant filed a pre-trial motion requesting that the district attorney general disclose the standards used to determine whether to seek the death penalty in murder cases. The assistant district attorney general explained that aggravating and mitigating circumstances were examined and weighed in order to determine whether to seek the death penalty under particular facts. Defense counsel’s request to put the assistant district attorney general under oath to testify was denied by the trial court.
Prosecutorial discretion used in selecting candidates for the death penalty does not result in any constitutional deprivation. Gregg v. Georgia, 428 U.S. 153, 198-99, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976); State v. Brimmer, 876 S.W.2d 75, 86 (Tenn.1994); State v. Cazes, 875 S.W.2d 253, 268 (Tenn.1994). This issue is without merit.

II. RECUSAL OF TRIAL JUDGE

Defendant contends the trial judge should have granted a motion for recusal since the trial judge was the prosecuting attorney in an earlier robbery case that the state relied upon as an aggravating circumstance. A motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. Caruthers v. State, 814 S.W.2d 64, 67 (Tenn.Crim.App.1991). A motion for recusal should be granted whenever the judge’s impartiality might reasonably be questioned. Tenn. Sup.Ct. Rule 10, Code of Judicial Conduct, Canon 3C; State v. Hines, 919 S.W.2d 573, 578 (Tenn.1995).
The issue of recusal was addressed in the extraordinary appeal in Smith III. We noted that the record did not establish that the trial judge acted as a lawyer in any matter “in controversy” and further found no indication of bias. Smith III, 906 S.W.2d at 12. We found that the disqualification provisions of Article 6, § 11 of the Tennessee Constitution precluding a judge from presiding “on the trial of any cause ... in which he may have been of counsel ...” does not apply to prior concluded *28 trials. Id. at 12 (citing State v. Warner, 649 S.W.2d 580, 581 (Tenn.1983)). We, nevertheless, concluded that the issue could be more fully litigated in the direct appeal if the defendant establishes that the nature of the trial judge’s participation in the earlier prosecution deprived the defendant of a fair and impartial arbiter. Our review of the record indicates no further evidence of the nature of the trial judge’s participation in the underlying charge. Accordingly, this issue is without merit.

III. JURY SELECTION EXPERT

Defendant requested the expert services of a licensed private investigator, two (2) psychologists, a medical doctor and a jury selection expert. All services were authorized except the jury selection expert. Defendant challenges this denial.
The decision of whether to authorize expert services lies within the sound discretion of the trial court. See State v. Cazes, 875 S.W.2d 253, 261 (Tenn.1994), cert. denied, 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); State v. O’Guinn, 709 S.W.2d 561, 568 (Tenn.1986) cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). The right to these services exists only upon a showing of a particularized need. State v. Shepherd, 902 S.W.2d 895, 904 (Tenn.1995); State v. Black, 815 S.W.2d 166, 179-80 (Tenn.1991). “The defendant must show that a substantial need exists requiring the assistance of state paid supporting services and that his defense cannot be fully developed without such professional assistance.” State v. Evans, 838 S.W.2d 185, 192 (Tenn.1992), cert. denied 510 U.S. 1064, 114 S.Ct. 740, 126 L.Ed.2d 702 (1994).
Our Supreme Court has held that there is no constitutional violation in the denial of a capital murder defendant’s request for funds for a jury selection expert, absent a showing of any special need. See State v. Black, 815 S.W.2d at 179-80. There was no showing of a particularized need for a jury selection expert in the case at bar. Defense counsel had represented defendant in both of his prior trials and conducted extensive voir dire in the present case. The trial court did not abuse its discretion in denying funds for a jury selection expert. This issue is without merit.

IV. JURY SELECTION

A. Questionnaire on Life Imprisonment
Defense counsel was allowed to submit an extensive questionnaire to potential jurors prior to the jury selection process. The trial judge disallowed, however, two (2) questions asking whether the potential juror believed that a person sentenced to life would spend the rest of his life in prison, and if not, how many years he/she thought such a person would serve. One of these questions also asked whether this would make the potential juror less likely to vote for a life sentence.
The scope and extent of voir dire is entrusted to the discretion of the trial judge whose actions will not be disturbed absent a clear abuse of discretion. State v. Irick, 762 S.W.2d 121, 125 (Tenn.1988); State v. Poe, 755 S.W.2d 41, 45 (Tenn. 1988). Defendant contends more leeway should be allowed in voir dire so as to enable him to intelligently exercise peremptory challenges. Although we agree with this general statement, we find no abuse of discretion in this instance. Without the opportunity of an explanation from counsel or the court as to these questions on the questionnaire, this could lead to unwarranted speculation as to the meaning of a life sentence. This issue is without merit.
B. Group Voir Dire
The trial judge denied defendant’s request for individual voir dire on all issues except pre-trial publicity and views on the death penalty. Defendant cites three (3) instances during group voir dire when jurors stated they would be unable to follow the law. He contends he was prejudiced *29 by group voir dire. All of these jurors were ultimately excused for cause.
The trial court’s authority to question jurors individually is permissive, not mandatory. State v. Hutchison, 898 S.W.2d 161, 167 (Tenn.1994), cert. denied 616 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1994). It is only where there is a significant possibility that jurors have been exposed to potentially prejudicial material that individual voir dire is mandated. State v. Cazes, 875 S.W.2d at 262. Our review of the record does not indicate any prejudice to the defendant as a result of group voir dire. The three (3) instances related by the defendant did not result in prejudicial information being imparted to other jurors. This issue is without merit.
C. Alternating Voir Dire Questioning
Defendant complains that the trial judge erred in not alternating the order of voir dire between the state and the defense. This issue was rejected in Smith II, 867 S.W.2d at 20. We find no abuse of discretion in allowing the state to proceed first in voir dire questioning.
D. Sua Sponte Dismissals for Cause
Defendant contends the trial court erred by sua sponte excusing several prospective jurors for cause. In the instances cited by defendant, each juror had indicated that he or she could not follow the law. It is clear that each juror’s views would “prevent or substantially impair the performance of his [her] duties as a juror in accordance with his [her] instructions and his [her] oath.” Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985).
The trial court’s findings on this issue are entitled to a presumption of correctness since they involve a determination of demeanor and credibility, and the burden rests on the defendant to establish by clear and convincing evidence that the trial court’s determinations were erroneous. State v. Alley, 776 S.W.2d 506, 518 (Tenn. 1989). The responses of these jurors gave the judge the “definite impression” they could not follow the law. Wainwright v. Witt, 469 U.S. at 425-26, 105 S.Ct. at 853.
These jurors met the standard for dismissal. See State v.Hutchison, 898 S.W.2d 161 (Tenn.1994). Furthermore, the argument that defense counsel should be allowed to rehabilitate such jurors is without merit. State v. Harris, 839 S.W.2d 54, 65 (Tenn.1992).
E.Failure to Excuse for Cause
Defendant contends the trial judge erred in failing to excuse two (2) potential jurors who stated they could not consider mitigating evidence. Although both potential jurors initially stated they would have trouble considering certain kinds of mitigating evidence, the totality of the questions and answers reveals that they could follow the law in weighing aggravating and mitigating circumstances. The trial court has wide discretion in ruling on the qualifications of jurors. State v. Howell, 868 S.W.2d 238, 248 (Tenn.1993). The failure to exclude these two (2) jurors was not an abuse of discretion.
Furthermore, one of the jurors was excused by defendant’s peremptory challenge. Neither did the other juror sit on the panel. The defendant exercised only six (6) peremptory challenges out of the allowed 15 challenges. Therefore, defendant is entitled to no relief. See State v. Howell, 868 S.W.2d at 248-49.
[V. Failure to Present Further Mitigating Proof — Deleted]

VI. ADMISSION OF WEBB JUDGMENT OF CONVICTION

The state introduced the judgment showing that the defendant had been found guilty of the first degree murder of Webb. Defendant contends this judgment was erroneously relied upon by the state as an aggravating circumstance.
*30 No contemporaneous objection was made to the introduction of this evidence. The issue is, therefore, waived. Tenn. R.App. P. 36(a); State v. Walker, 910 S.W.2d 381, 386 (Tenn.1995). We will, nevertheless, address this issue.
This was a re-sentencing hearing only as guilt had already been determined and affirmed on the previous appeal. The state was entitled to show to the jury that the defendant had in fact been convicted of the first degree murder for which the jury was to determine the sentence.
Defendant’s primary argument is that the state was improperly allowed to use this first degree murder conviction as an aggravating circumstance in the same case. The state relied upon one (1) aggravating circumstance; namely, the defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involved the use or threat of violence to the person. Tenn.Code Ann. § 39 — 2—203(i)(2) (1982) (emphasis added). Obviously, the state could not rely upon the present conviction as one of the previous violent felony convictions.
However, our reading of the record does not indicate that the state relied upon this conviction as one of the prior violent felonies. From voir dire through final argument the state contended that the defendant had been convicted of three (3) prior felony offenses involving violence or the threat of violence; namely, two (2) robberies and the first degree murder of Pierce. The trial judge further instructed the jury that the state alleged the defendant had been previously convicted of murder in the first degree and two (2) robberies. The trial court was obviously referring to the Pierce first degree murder conviction which had been made an exhibit. This issue is without merit.

VIL PRIOR VIOLENT FELONIES

As previously stated, the prosecution relied upon the prior violent felonies aggravating circumstance. Tenn.Code Ann. § 39-2-203(0(2) (1982), the statute in effect at the time of this crime, defined this aggravating circumstance as follows:
The defendant was previously convicted of one (1) or more felonies, other than the present charge, which involved the use or threat of violence to the person.
Defendant contends the state was erroneously allowed to introduce evidence in support of this aggravating circumstance.
A. Pierce Judgment
Defendant argues that the introduction of his conviction and redacted Order of Judgment for the first degree murder of Pierce was erroneously allowed as evidence. Smith I condemned the use of defendant’s life sentence in the Pierce case as evidence in the Webb case. 755 S.W.2d at 767-69. Upon re-trial the state again failed to observe the warning in Smith I and related to the jury that the defendant had received a life sentence for the Pierce murder. On appeal in Smith II the Court again condemned this evidence and remanded for a new sentencing hearing. 857 S.W.2d at 25. Both Smith I, 755 S.W.2d at 769, and Smith II, 857 S.W.2d at 25, recognized the sentencing relevance of the Pierce conviction but not the Pierce life sentence.
The trial judge conducted an extensive jury-out hearing and redacted the Pierce judgment omitting any reference to the sentence. Upon being asked if there were any objections to the redactions, defense counsel made no objection. The issue is, therefore, waived. Tenn. R.App. P. 36(a); State v. Walker, 910 S.W.2d at 386. Furthermore, the jury was specifically instructed by the trial judge not to speculate as to the significance of any redactions. The jury is presumed to have followed the instructions of the court. State v. Woods, 806 S.W.2d 205, 211 (Tenn.Crim.App.1990).
The admission of the redacted judgment showing the conviction but not the sentence is in compliance with the dictates of *31 Smith I and Smith II. This issue is without merit.
B. Direct Participation in Violence
Defendant contends that he did not directly participate in the use of violence in the Pierce murder as a co-defendant was the person who actually fired the shot that killed Pierce. He argues that direct participation is necessary to trigger this homicide as a prior violent felony. This issue was decided contrary to defendant’s argument in Smith II, 857 S.W.2d at 10. See also State v. Teague, 680 S.W.2d 785, 789 (Tenn.1984). This issue is without merit.
C. Introduction of Indictment
Defendant contends the trial court erred in allowing the introduction of an armed robbery indictment since the judgment of conviction was only for simple robbery. This issue has also been determined contrary to defendant’s argument in both Smith I, 755 S.W.2d at 764, and Smith II, 857 S.W.2d at 20. This issue is without merit.
[VIII. Victim Impact Testimony— Deleted]

IX. PROSECUTORIAL MISCONDUCT

Defendant contends that prosecutorial misconduct undermined his rights to a fair trial and a reliable sentencing determination. No contemporaneous objection was made to any of the alleged improper arguments. The issue is waived. Tenn. R.App. P. 86(a); State v. Keen, 926 S.W.2d 727, 736 (Tenn.1994). Nevertheless, we will address these issues.
A.Intentional Murder
Defendant contends the prosecutor improperly argued to the jury that the homicide was intentional as opposed to being accidental. Our review of the argument does not substantiate this claim. The prosecutor merely related the facts and circumstances surrounding the murder and stated the barrel of the gun “ended up in her nose, and that’s where Leonard Smith pulled the trigger.” This argument was not improper.
B.Deterrence
Defendant contends the prosecutor unlawfully argued the need for deterrence. Any argument based upon general deterrence is improper. State v. Irick, 762 S.W.2d 121, 131 (Tenn.1988); Smith II, 857 S.W.2d at 13.
The questioned argument was actually an explanation as to why felony murder was a first degree murder, the most serious offense under our law. The prosecutor stated that without felony murder, there would be no protection for those victimized by someone like the defendant and his co-defendant. We do not view this as a deterrence argument. This issue is without merit.
C.Webb Conviction
Defendant contends the prosecutor improperly argued that the present conviction was a prior violent felony which the jury could consider as an aggravating circumstance. The prosecutor clearly argued to the jury that the exhibit representing the present conviction was the offense for which the jury was now going, to be required to sentence the defendant to either life imprisonment or death. He reviewed the other three (3) judgments as those to be relied upon for prior felony convictions. The prosecutor did not argue that the present conviction could be considered as an aggravating circumstance. This issue is without merit.

X. JURY INSTRUCTIONS

Defendant contends the trial court erred in failing to instruct the jury on specific non-statutory mitigating circumstances. Further, the defendant contends the trial court erred in refusing to instruct the jury to presume that a sentence to life imprisonment meant the defendant would spend *32 the rest of his life in prison, whereas a sentence to death would presume death by electrocution.
A. Non-Statutory Mitigating Circumstances
Defendant requested that the trial court give special jury instructions listing four non-statutory mitigating circumstances. The trial court declined to do so. Defendant contends this is reversible error under State v. Odom, 928 S.W.2d 18, 30 (Tenn.1996).
The present offense was committed pri- or to November 1, 1989; therefore, sentencing for this capital offense is governed by the statutory law in effect on the date of the commission of the offense. State v. Hutchison, 898 S.W.2d 161, 174 (Tenn. 1994), cert. denied 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995). At the time of the commission of this offense, the statute did not require that the jury be instructed as to non-statutory mitigating circumstances. Tenn. Code Ann. § 39-2-203(e)(1982); State v. Hartman, 703 S.W.2d 106, 118 (Tenn.1985).
State v. Odom required the jury to be instructed on non-statutory mitigating circumstances when raised by the evidence and specifically requested by either the state or the defendant. 928 S.W.2d at 30. However, Odom was based upon the requirements of the new statute, TenmCode Ann. § 39-13-204(e)(1991). Odom specifically recognized that neither the United States Constitution nor the Tennessee Constitution required the submission of non-statutory mitigating circumstances to the jury. 928 S.W.2d at 30 (citing State v. Hutchison, 898 S.W.2d at 173-74). We, therefore, conclude that the trial judge did not err in refusing to charge non-statutory mitigating circumstances as was allowable under the statute in effect on the date of the commission of the offense.
B. After-Effect of Verdict
Defendant requested that the jury be instructed that they were to presume that if the defendant were sentenced to life imprisonment, he would spend the rest of his life in prison; and that if he were sentenced to death, he would be executed by electrocution. Alternatively, the defendant requested that the jury be instructed that a sentence of life imprisonment meant the defendant would remain in prison for the rest of his life, and that a sentence of death meant that the defendant would be executed by electrocution. These requests were rejected by the trial court. Our Supreme Court has recently ruled that the jury need not be given information about parole availability. State v. Bush, 942 S.W.2d 489 (1997). Likewise, a trial court does not err by refusing to instruct jurors that they should presume that the sentence they assess will actually be carried out. State v. Caughron, 855 S.W.2d 526, 543 (Tenn.1993); see also Smith II, 857 S.W.2d at 11. This issue is without merit.

XI. TAKING EXHIBITS TO JURY ROOM

Defendant contends the trial court erred in allowing the jury to take the exhibits with them to the jury room for use in deliberations. More specifically, defendant contends he was prejudiced by the redactions on the Pierce and Webb convictions.
Tenn. R.Crim. P. 30.1 was in effect at the time of trial. This rule provides that the jury shall take to the jury room all exhibits that were received in evidence unless the Court, for good cause, determines otherwise. Defendant’s contention that the jury would engage in undue speculation due to the redactions on the Pierce and Webb convictions is without merit. As previously noted, the jury had been specifically instructed not to speculate concerning these matters. There was no abuse of discretion in allowing the jury to take these exhibits to the jury room pursuant to Tenn. R.Crim. P. 30.1.

*33
XII. CONSTITUTIONALITY OF DEATH PENALTY

Defendant contends the Tennessee death penalty statutes are unconstitutional in the following respects:
(1) the statutes fail to meaningfully narrow the class of death eligible defendants;
(2) the statutes allow the death penalty to be imposed capriciously and arbitrarily;
(3) electrocution constitutes cruel and unusual punishment; and
(4) the appellate review process in death penalty cases is constitutionally inadequate.
Each of these contentions has been rejected by our Supreme Court. State v. Keen, 926 S.W.2d at 741-44, This issue is without merit.
[XIII. Proportionality Review — Deleted]
We find no reversible error; therefore, the judgment of the trial court is AFFIRMED.
CONCUR:
JERRY L. SMITH, Judge
CHRIS CRAFT, Special Judge.

. Tennessee Constitution, Article I, section 8, provides: "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.”

. Tenn.Code Ann. § 39-13-204(c)(Supp.l998) states that: "[t]he court may permit a member or members, or a representative or representatives of the victim’s family to testify at the sentencing hearing about the victim and about the impact of the murder on the family of the victim and other relevant persons. Such evidence may be considered by the jury in determining which sentence to impose. The court shall permit members or representatives of the victim’s family to attend the trial, and those persons shall not be excluded because the person or persons shall testify during the sentencing proceeding as to the impact of the offense.”

.This thought was expressed by John Donne in Devotions Upon Emergent Occasions, Meditation XVII (1624).

. As a review of Tenn.Code Ann. § 39-13-204(i) demonstrates, the statutory aggravating factors focus on the defendant’s criminal history as well as the particular circumstances of the crime at issue.

. Under the New Jersey statute, the defendant may introduce evidence concerning statutory mitigating factors, including what the court refers to as a "catch-all factor” which is "[a]ny other factor which is relevant to the defendant’s character or record or to the circumstances of the offense.” N.J. Stat. Ann. § 2C: 11-3(b)(5)(h) (Supp.1998).