IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 25, 2016

**STATE OF TENNESSEE v. FRANKLIN DALE GRAYSON, JR.**

**Appeal from the Criminal Court for Johnson County**
**No. 2014-CR-119    Stacy L. Street, Judge**
_____

**No. E2016-00803-CCA-R3-CD – Filed November 8, 2016**
_____

On November 14, 2014, the Johnson County Grand Jury returned an indictment charging the defendant, Franklin Dale Grayson, Jr., with four drug-related offenses including, initiating a process to manufacture methamphetamine (Count 1), possession of a Schedule II controlled substance (methamphetamine) with intent to sell or deliver (Count 2), maintaining a dwelling for using or selling controlled substances (Count 3), and possession with intent to use drug paraphernalia (Count 4). Following trial, a jury found the defendant guilty as charged in Counts 1 and 4. They found the defendant guilty of the lesser-included offense of simple possession of a Schedule II controlled substance in Count 2 and not guilty of maintaining a dwelling for using or selling controlled substances in Count 3. The trial court imposed an effective thirteen-year sentence. On appeal, the defendant argues the evidence is insufficient to support his conviction for initiating a process to manufacture methamphetamine and that the prosecutor made two improper statements in his closing argument that constitute reversible error. After our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT L. HOLLOWAY, JR., JJ., joined.

Bob Oaks, District Public Defender; Melanie Sellers, Assistant District Public Defender (at trial and on appeal), for the appellant, Franklin Dale Grayson, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Tony Clark, District Attorney General; and Matthew Roark, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

On September 15, 2014, investigators from the Johnson County Sheriff's Department arrested the defendant after finding an active, one-pot methamphetamine lab in his possession. Investigators learned of the defendant's active methamphetamine lab through Richie Greene, a confidential informant. Prior to the defendant's arrest, Mr. Greene contacted Investigator Jonathan Stout and informed him that the defendant would be cooking methamphetamine that evening.

Specifically, Mr. Greene stated that prior to contacting Investigator Stout, he travelled to Virginia with Quincy Roark. While in Virginia, Mr. Roark purchased pseudoephedrine pills from Walgreens.[1] After purchasing the pills, Mr. Roark asked Mr. Greene to take the pills to the defendant so that the defendant could make methamphetamine. At the time, the defendant was staying in a trailer rented by Mr. Roark located at 6171 Highway 91 North in Johnson County, Tennessee. The defendant was also in a relationship with Mr. Roark's wife.[2] This tension led Mr. Roark to ask Mr. Greene to deliver the pseudoephedrine pills to the defendant for the cook.

Rather than immediately delivering the pills to the defendant, Mr. Greene contacted Investigator Stout. The two met, and Mr. Green showed Investigator Stout the box of pseudoephedrine pills purchased by Mr. Roark. According to Mr. Greene, Investigator Stout instructed him to go to the Highway 91 property "to see if there was any evidence of a lab there." Investigator Stout kept the pseudoephedrine pills and began preparing a search warrant. While Mr. Greene was at the property, the defendant told him that "he had everything he needed. He [was] just waiting on the pills." The defendant then asked Mr. Greene to come back with the pseudoephedrine pills, and Mr. Greene agreed to do so.

After leaving the defendant, Mr. Greene then met with Investigator Stout a second time. Investigator Stout gave Mr. Greene the pseudoephedrine pills and a recorder. Mr. Greene had the recorder on when he returned to the Highway 91 property with his wife and a friend, Mary Howard. After receiving the pseudoephedrine from Mr. Greene, the defendant began to cook methamphetamine. The other ingredients needed for the cook were already in the defendant's possession.

---

[1] Mr. Roark's Walgreens receipt, which was entered into evidence, showed a purchase of sinus/cold medicine on September 15, 2014, at a Walgreens in Abingdon, Virginia.

[2] The exact relationships between the defendant, Mr. Roark, and Mr. Roark's wife and/or ex-wife are unclear from the record.

The State played the recording for the jury at trial. Mr. Greene identified his voice on the recording along with the voices of his wife, Mary Howard, and the defendant. Mr. Greene also identified portions of the recording that captured the defendant in the process of making methamphetamine. Specifically, he testified that 52 minutes and 8 seconds into the recording, the defendant "already had the pills crushed up, put in the bottle, mix, and it was starting." Mr. Greene also identified portions of the manufacturing process that could be heard on the recording, including the sound of the cook bottle being shaken and being opened to release pressure. Mr. Greene stated that no one assisted the defendant with the manufacturing process. After the cook was underway, Mr. Greene and his wife left the Highway 91 property and called Investigator Stout.

Investigator Stout, along with three other investigators from the Johnson County Sheriff's Department, then initiated a search of the Highway 91 property.[3] Upon their arrival, they found the defendant on the telephone in front of the trailer on the property. Investigator Christopher Allen Lipford detained the defendant, and the defendant consented to a search of the property.[4] The consensual search of the property revealed an active, one-pot methamphetamine lab on the back porch of the trailer. Investigator Stout photographed the property and collected a sample of liquid from the one-pot methamphetamine lab to be tested by the Tennessee Bureau of Investigation.

During the search, investigators also found drug paraphernalia throughout the property. Investigator Lipford logged all of the evidence, which included: a four-pack of Energizer batteries, Ultimate Lithium; tubing; two hypodermic syringes; a spoon with residue; a plastic baggie with residue; two Tennessee citations issued to the defendant; a black suitcase; iodized salt, 20 ounce; a Walmart receipt; a CVS pharmacy receipt; a red straw; Ronsonol lighter fluid; a black funnel; Drano, 18 ounce; a Walgreens bag with a receipt; a bottle with unknown liquid; a rubber hose with pop bottle lid; a bottle with unknown liquid; small weight scales; a Samsung Verizon cell phone; and a pop bottle with unknown liquid.

Investigator Shawn Brown interviewed the defendant during the search and obtained a statement from him. In his statement, the defendant admitted that the cook bottle found on the back porch was his and that it contained "pills (sudo), lye, ammonia (sic) nitrate, Coleman fuel, [and] lithium." When asked about the intended purpose of the cook bottle, the defendant stated, "To manufacture meth, I reckon." Further, the defendant indicated he normally got "[a]lmost two grams" of methamphetamine from this type of cook. The defendant's signed statement was entered into evidence at trial.

_____

[3]The exact timing is not clear from the record, however Investigator Stout testified that about four hours elapsed between his initial meeting with Mr. Greene and the search of the Highway 91 property.

[4]Though the defendant consented to the search, Investigator Stout did obtain a search warrant for the Highway 91 property.

Agent Ashley Cummings, a forensic chemist with the Tennessee Bureau of Investigation, tested the liquid that Investigator Stout extracted from the cook bottle during the search. Agent Cummings' report indicated that the liquid sample contained methamphetamine. James Michael Derry, an expert in the process of manufacturing methamphetamine and in methamphetamine lab deconstruction, explained the process of making methamphetamine to the jury. He listed pseudoephedrine, lye, ammonium nitrate, fuel, lithium, and water as necessary ingredients in the manufacturing of methamphetamine. Mr. Derry also reviewed a photograph of the cook bottle found during the search, and opined that the defendant was "well in the process" of making methamphetamine.

The defense proof consisted of testimony from Earl Dunn, Steven Bunn, and the defendant. Mr. Dunn testified that he owned the Highway 91 property and believed Mr. Roark, not the defendant, was living in the trailer on the property. Mr. Bunn also testified that on September 15, 2014, he picked the defendant up around 11:00 a.m., worked the defendant until about 5:00 or 5:30 p.m., drank beer with the defendant, and then dropped him off at the Highway 91 property.

The defendant testified that after working for Mr. Bunn, he returned to the Highway 91 property around 7:00 or 8:00 p.m. The defendant admitted to drinking beer and taking a "shot" of methamphetamine on the day of his arrest. The defendant further testified that Mr. Greene came to the Highway 91 property one time on September 15, 2014, with a bottle and pseudoephedrine pills. The defendant stated that he and Mr. Greene put the cook together, testifying: "It wasn't just me. I mean, I – I can't say that I'm innocent of any of it." When asked about his plans for the methamphetamine, the defendant admitted that if he's "involved in it, if it's being made, [he's] doing it." Additionally, the defendant testified that he was previously convicted of felony evading arrest, failure to appear, and theft under $500.

At the conclusion of the trial, the jury found the defendant guilty of initiating a process to manufacture methamphetamine and possession with intent to use drug paraphernalia. As to Count 2, the jury found the defendant guilty of the lesser-included offense of simple possession of a Schedule II controlled substance. The jury found the defendant not guilty of maintaining a dwelling for using or selling controlled substances as charged in Count 3.

The trial court sentenced the defendant to thirteen years in confinement as a Range II, Multiple Offender, for initiating a process to manufacture methamphetamine, eleven months and twenty-nine days for simple possession of a Schedule II controlled substance, and eleven months and twenty-nine days for possession of drug paraphernalia with all

sentences to be served concurrently. The trial court also imposed fines of $2,500 for Count 1and $150 for Count 4.

On April 4, 2016, the defendant argued his motion for a new trial before the trial court. The defendant argued insufficient evidence existed to convict him of initiating a process to manufacture methamphetamine. Additionally, the defendant argued that in his closing argument, the prosecutor improperly vouched for the testimony of Mr. Greene and improperly referred to the defendant's criminal history. The State argued that the trial court gave curative instructions after each improper statement and that the curative instructions were enough to properly guide the jury's deliberations. The trial court agreed with the State and denied the defendant's motion for a new trial. This timely appeal followed.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence produced at trial is insufficient to support his conviction for initiation of a process to manufacture methamphetamine under Tennessee Code Annotated section 39-17-435. When the sufficiency of the evidence is challenged, appellate courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190–92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). Appellate courts "do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state." *State v. Adams*, 45 S.W.3d 46, 55 (Tenn. Crim. App. 2000) (citing *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978)). As a result, "'a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State.'" *State v. Thorpe*, 463 S.W.3d 851, 864 (Tenn. 2015) (quoting *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992)).

Further, "[a] jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient."

*State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). The Tennessee Supreme Court explained as follows:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 370 S.W.2d 523, 527 (1963)). Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)).

The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). The jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence. *Dorantes,* 331 S.W.3d at 379 (citing *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006)). Further, the jury decides "'the extent to which the circumstances are consistent with guilt and inconsistent with innocence.'" *Id.* (quoting *Rice,* 184 S.W.3d at 662). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.* Rather, "conflicts in the testimony are resolved in favor of the verdict of the jury and the judgment of the trial court, and the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *Tuggle*, 639 S.W.2d at 914 (citing *Cabbage,* 571 S.W.2d at 835).

As charged in Count 1 of the indictment, initiation of a process to manufacture methamphetamine is committed when the defendant "knowingly initiate[s] a process intended to result in the manufacture of any amount of methamphetamine." Tenn. Code Ann. § 39-17-435(a). Initiation means "to begin the extraction of an immediate methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any

substance or substances that can be used in methamphetamine creation." Tenn. Code Ann. § 39-17-435(c). The statute goes on to explain that "[i]t shall not be a defense to a violation of this section that the chemical reaction is not complete." Tenn. Code Ann. § 39-17-435(b).

The defendant argues the evidence produced at trial is insufficient to sustain his conviction under Count 1. In support of his argument, the defendant contends that "the pseudoephedrine used to initiate the manufacture of methamphetamine was purchased by Quincy Roark, transported across state lines by Richie Greene, and passed through the hands of the Johnson County Sheriff's Department." The defendant also relies on his own testimony that Mr. Greene initiated the manufacturing process and crushed the pseudoephedrine pills.

The State, however, presented evidence portraying a different story regarding the initiation of the methamphetamine cook. The State offered testimony from Mr. Greene who stated that the defendant crushed the pseudoephedrine pills, thereby initiating the methamphetamine cook. The jury also heard the audio recording of the interactions between Mr. Greene and the defendant after the defendant received the pseudoephedrine pills. Mr. Greene identified in the recording when the defendant initiated the process of manufacturing methamphetamine, when the defendant shook the cook bottle, and when the defendant opened the top of the cook bottle to relieve pressure. The jury heard testimony that the cook bottle found on the Highway 91 property was "well in the process" of making methamphetamine and that the liquid tested from the cook bottle contained methamphetamine. Additionally, the defendant testified that he planned to use the methamphetamine produced from the cook bottle. The jury also reviewed photographs of the drug paraphernalia found during the search of the Highway 91 property. Finally, the jury reviewed the defendant's written statement wherein he admitted that the active, one-pot methamphetamine lab was his, he listed the ingredients inside the cook bottle, and he identified the typical yield of methamphetamine expected from the cook.

The jury weighed the defendant's testimony, that Mr. Greene initiated the methamphetamine cook, in relation to the other evidence presented at trial and reconciled the evidence in favor of the State. This Court will not reweigh the evidence. *Dorantes,* 331 S.W.3d at 379. Accordingly, after reviewing the evidence in the light most favorable to the prosecution, we conclude that sufficient evidence exists to support the defendant's conviction for initiating a process to manufacture methamphetamine. The judgment of the trial court is affirmed.

II.    *Prosecutorial Misconduct*

The defendant also argues that two statements made by the prosecutor in his closing argument constitute prosecutorial misconduct, thus compromising the jury's verdict and warranting a new trial. Specifically, the defendant argues that the prosecutor improperly vouched for the credibility of Mr. Greene and improperly referenced the defendant's criminal history. The State responds that the prosecutor's comments were not so improper as to compromise the jury's verdict in light of the weight of the evidence produced at trial, the trial court's curative instructions regarding the two statements, and the jury's findings in Counts 2 and 3. After our review, we agree with the State.

The purpose of a closing argument is "to sharpen and to clarify the issues that must be resolved in a criminal case." *State v. Banks,* 271 S.W.3d 90, 130 (Tenn. 2008) (citing *Herring v. New York*, 422 U.S. 853, 862 (1975)); *see* Tenn. R. Crim. P. 29.1. It is during a closing argument that attorneys "present their theory of the case and . . . point out the strengths and weaknesses in the evidence to the jury." *Banks*, 271 S.W.3d at 130 (citing *Christian v. State*, 555 S.W.2d 863, 866 (Tenn. 1977)). Accordingly, trial courts have wide discretion to allow attorneys "great latitude in both the style and the substance of their arguments." *Id.* at 131. Both parties "may use colorful and forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence, or make derogatory remarks or appeal to the jurors' prejudices." *Id.* (citing *United States v. Mullins,* 446 F.3d 750, 759 (8th Cir. 2006), *State v. Reid,* 164 S.W.3d 286, 320–21 (Tenn. 2005)). Despite the leeway afforded to each party, closing arguments still "must be temperate, must be based on the evidence introduced at trial, and must be pertinent to the issues in the case." *Id.* (citing *State v. Middlebrooks,* 995 S.W.2d 550, 557 (Tenn. 1999)).

It is well-settled that "[a] criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument." *Id.* (citing *United States v. Young*, 470 U.S. 1, 11-13 (1985)). Rather, in order to warrant reversal, the improper closing argument must be "so inflammatory or improper that it affected the outcome of the trial to the defendant's prejudice." *Id.* (citing *State v. Thacker,* 164 S.W.3d 208, 244 (Tenn. 2005) (appendix); *State v. Cribbs,* 967 S.W.2d 773, 786 (Tenn. 1998)). To determine the "prejudicial impact" of an improper argument, this Court should consider:

(1) the conduct at issue in light of the facts and circumstances of the case,
(2) the curative measures undertaken by the trial court and the prosecution,
(3) the intent of the prosecutor in making the improper argument, (4) the cumulative effect of the improper argument and any other errors in the record, and (5) the relative strengths and weaknesses of the case.

*Banks*, 271 S.W.3d at 131 (citing *Reid,* 164 S.W.3d at 321, *Middlebrooks,* 995 S.W.2d at 559-60). Though this Court has identified five areas of prosecutorial misconduct occurring during closing arguments, only two are pertinent to this appeal. *See State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003). We will address each allegation in turn.

First, the defendant alleges the prosecutor improperly vouched for Mr. Greene. *See Goltz*, 111 S.W.3d at 6. During his closing argument, the prosecutor addressed Mr. Greene's credibility, after which the following exchange occurred:

> [Prosecutor]: Richie Greene, you heard from him. I'll let you judge his credibility. He sat, in the State's opinion, told you the truth. He told you what he did.
>
> [Defense Counsel]: I have to object, Your Honor, to the vouching.
>
> [The Court]: Sustained. Sustained. You cannot vouch for a witness. Disregard what he said the…An attorney is not allowed or a party is not allowed to vouch for a witness. Whether or not somebody tells the truth, whether or not you believe somebody is your job, and nobody's to tell you any different. You understand? All right.
>
> [Prosecutor]: I apologize. I withdraw that. I …That – that was improper. I'm sorry.

While it "is unprofessional conduct for the prosecutor to express [his] personal belief or opinion as to the truth or falsity" of Mr. Greene's testimony, we conclude this exchange does not warrant a reversal of the defendant's convictions. *State v. Foust*, 482 S.W.3d 20, 51 (Tenn. Crim. App. 2015) (citing *Goltz*, 111 S.W.3d at 6).

The record indicates that the prosecutor's statement about Mr. Greene's veracity was unintentional, immediately objected to by the defendant, withdrawn by the prosecutor, and cured by the trial court through specific instructions to the jury. The trial court also instructed the jury, at the outset of trial, to follow its guidance during the trial proceedings. Specifically, the court instructed:

> At times during the trial one of the attorneys may make an objection, and I may sustain it or I may overrule it. Just follow – follow what I tell you, and if I tell you to disregard something in a case, then you must do that because the law doesn't allow you to consider it. . . So if somebody says

something, and I said, "You're to disregard their testimony," you cannot consider that in making your decision.

Both the initial and the curative instructions provided by the trial court were timely, specific, and properly guided the jurors as to how to assess Mr. Greene's credibility and the prosecutor's commentary of the same. This Court presumes the jury followed the trial court's instructions. *State v. Joshua R. Starner*, No. M2014-01690-CCA-R3-CD, 2016 WL 1620778, at *21 (Tenn. Crim. App. Apr. 20, 2016) (citing *State v. Young,* 196 S.W.3d 85, 111 (Tenn. 2006); *State v. Shaw,* 37 S.W.3d 900, 904 (Tenn. 2001)).

Guided by the *Banks* factors, we further conclude that although Mr. Greene's testimony was important to the State's case, additional evidence exists supporting the defendant's convictions. The evidence presented at trial includes the defendant's written admission of ownership of the active, one-pot methamphetamine lab, an audio recording of the defendant's manufacturing methamphetamine, and evidence of drug paraphernalia found throughout the Highway 91 property. Additionally, the defendant also testified that he planned to use the methamphetamine produced from the active cook bottle found on the property. When viewed in light of the other evidence presented at trial, the prosecutor's statement about Mr. Greene's credibility does not warrant reversal of the defendant's convictions because the defendant has failed to show that the prosecutor's statement prejudiced the outcome of his trial. Accordingly, the defendant is not entitled to relief as to this issue.

Secondly, the defendant contends the prosecutor improperly "inject[ed] issues broader than the guilt or innocence" of the defendant in his closing statement by commenting on the defendant's criminal history and his familiarity with the criminal justice system. *Goltz,* 111 S.W.3d at 6 (citing *State v. Cauthern,* 967 S.W.2d 726, 737 (Tenn. 1998); *State v. Keen,* 926 S.W.2d 727, 736 (Tenn. 1994)). At the end of the prosecutor's final closing argument, the following exchange occurred:

[Prosecutor]: You can think whatever you want of [the defendant]. I mean, he's a nice enough guy. Really is. But it doesn't change the fact that [he's] been in trouble before and he keeps get…

[Defense Counsel]: Objection, Your Honor.

[Prosecutor]: He testified to being in trouble before. How is that …

[Defense Counsel]: As to credibility.

[The Court]: That issue is to be decided by the Jury. That objection will be sustained. You will hear testimony about the prior conviction of the [d]efendant. You've heard that. You're to use that to judge his credibility only. We don't…And the one reason why that – that we gate-keep this so closely is this: You don't – you don't judge this case on whether or not he committed a crime in the past. You judge this case on the evidence that you've heard in this case. The fact that he has a prior conviction goes to his credibility only, and – and you're to give it whatever weight you feel like it deserves, if any. Understand? Okay. That's your curative instruction … Objection sustained.

[Prosecutor]: Where I was going with that was [the defendant] knows how this works. He took the stand and talked today. How…

[Defense Counsel]: Knowing how this works, Your Honor, is what I object.

[The Court]: I – I'll let him finish. Overruled at this time."

[Prosecutor]: I'm – that – that's really it. You have what you need to find this man guilty. Just go do what you got to do.

Again, the prosecutor's statements do not rise to the level of reversible error. The defendant testified on direct examination about his criminal history and that he planned to use the methamphetamine cooked on September 15, 2014. After the prosecutor made statements about the defendant's criminal history and his familiarity with the system, defense counsel raised an objection. The objection was sustained by the trial court and followed with a timely, curative instruction to the jury. Specifically, the trial court instructed the jury that it was only to consider the defendant's prior convictions in assessing the defendant's credibility. The initial jury instructions, as outlined above, apply to this allegation as well and served to inform the jury as to this issue. Nothing in the record indicates that the jury did not follow the trial court's curative instructions, and we will not assume otherwise. *Starner*, No. M2014-01690-CCA-R3-CD, 2016 WL 1620778, at *21.

Furthermore, the defendant has presented no evidence to show that the jury improperly considered the defendant's criminal history in convicting him in this case. Rather, the record indicates that the jury convicted the defendant based upon the evidence presented at trial. The jury considered the defendant's written statement and testimony wherein he admitted that the cook bottle was his and that he planned to use the methamphetamine from the cook. The jury considered Mr. Greene's testimony regarding the defendant's involvement in the cook. The jury considered testimony from the

-11-

investigators who searched the Highway 91 property and evidence of drug paraphernalia found during their search. And, the jury considered testimony from Mr. Dunn regarding his ownership of the Highway 91 property.

After considering all of the evidence, the jury convicted the defendant of initiating a process to manufacture methamphetamine, simple possession of methamphetamine, and possession of drug paraphernalia. The jury did not convict the defendant of maintaining a dwelling to use or sell controlled substances. Our review of the record indicates that the jury "carefully considered" the evidence presented at trial, rather than merely convicting the defendant based upon the prosecutor's statements. *State v. Michael Presson*, No. W2012-00023-CCA-R3-CD, 2014 WL 1669860, at \*24 (Tenn. Crim. App. Apr. 24, 2014), *appeal denied* (Nov. 10, 2014). Accordingly, we conclude that the prosecutor's statements regarding the defendant's criminal history and his familiarity with the criminal system did not prejudice the outcome of the defendant's trial. The defendant is not entitled to any relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE