IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 23, 2022

**STATE OF TENNESSEE v. ROBBIE GIBSON**

**Direct Appeal from the Criminal Court for Campbell County**
**No. 18333      E. Shayne Sexton, Judge**

**No. E2021-00769-CCA-R3-CD**

A Campbell County jury convicted the Defendant, Robbie Gibson, of aggravated stalking, aggravated assault, and possession of a prohibited weapon. The trial court sentenced him to an effective sentence of thirteen years to be served in the Tennessee Department of Correction. On appeal, the Defendant contends that the evidence at trial was insufficient to support his conviction for possession of a prohibited weapon and that the trial court erred when it limited the length of his closing argument. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JOHN W. CAMPBELL, SR., JJ., joined.

Andrew J. Crawford, Knoxville, Tennessee, for the appellant, Robbie Gibson.

Herbert H. Slatery III, Attorney General and Reporter; Andrew Womack, Assistant Attorney General; Jared R. Effler, District Attorney General; and Jordan W. Howanitz, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant stalking the victim, with whom he had previously resided, at her home. The victim had a protective order against the Defendant at that time. The Defendant detonated homemade explosive devices in the victim's front yard. He was discovered by law enforcement surveilling the victim's home with a rifle scope. Additionally, the Defendant followed the victim's vehicle and generally harassed her while she was driving. For these incidents, a Campbell County grand jury indicted the Defendant for aggravated stalking, violation of a protective order, possession of a

prohibited weapon, and aggravated assault.  An additional count of aggravated assault was dismissed prior to trial.

## A. Trial

The parties presented the following evidence at the Defendant's trial: Lakia Hicks testified that she could see the victim's home from her front porch.  Ms. Hicks, who was in a relationship with the victim's son, stated that she knew the Defendant from when he visited the victim frequently.  She testified that the Defendant drove a green Ford-150 pickup truck.  Ms. Hicks testified that one evening she was sitting on her front porch when she noticed the Defendant's vehicle parked on the street near hers and the victim's residences.  She then noticed the Defendant's vehicle slowly drive towards the victim's residence.  She then heard a "loud boom."  The Defendant's vehicle "took off."  Ms. Hicks called the victim, who sounded scared and worried.  Ms. Hicks's boyfriend, who was also the victim's son, went to check on the victim.

The victim testified that she lived with her husband and son and that the Defendant had lived with them periodically.  She testified that she had known the Defendant since her childhood and that they had been romantically involved in the past.  Their relationship ended in March of 2019, and the victim asked him to move out of her home. The Defendant returned to the victim's home against her wishes several times thereafter, and the victim sought an order of protection against the Defendant in June of 2019.  The victim was granted a temporary order of protection at that time.  The victim testified that she was afraid of the Defendant.  He had shown up at her place of work, followed her home, and yelled at her in her yard.  The victim testified that, the day the Defendant followed her to her home and, after she went inside, the Defendant sat in his car and laid on his horn.  He also banged on her front door and yelled at her to let him in.  The Defendant also stole her car keys that day and drove away in her vehicle.

The victim testified that on June 9, 2019, the order of protection was granted.  On July 16 or 17, 2019, the victim went to visit her mother after the victim finished work for the day.  On her way home late that evening, the victim noticed a vehicle following very closely behind "on [her] bumper."  The victim turned around and saw the Defendant's green pickup truck.  The Defendant proceeded to pull his vehicle alongside the victim's, and he shined a light directly in her eyes.  The victim sped away in an attempt to outrun the Defendant because she was afraid of him.  The Defendant continued to harass the victim with his vehicle, driving closely behind her and then pulling up next to her.  The victim could hear the Defendant screaming.  The Defendant continued this high-speed pursuit of the victim while shining the "spotlight" in her face.  The victim eventually pulled her vehicle over to the side of the road and called 911.  The Defendant also pulled his vehicle over and parked behind hers while she spoke to the 911 operator.  Law enforcement arrived soon after and the Defendant drove away.  The victim testified that she remained in fear of the Defendant and had acquired a gun permit and purchased a

weapon for her protection.

The victim testified that on or about August 13, 2019, she was asleep in her bed when she heard a "big huge boom" late at night. Ms. Hicks called her at that moment and then the victim called 911. Law enforcement arrived soon after, and the victim informed them of her protective order against the Defendant and provided a description of the Defendant's vehicle. Law enforcement left to look for the Defendant. The victim then discovered in her yard four "homemade bombs" made out of Mountain Dew soda bottles. The victim knew the Defendant consumed Mountain Dew from when he lived with her. The victim described one of the bottles as bubbling. The victim spotted some aluminum foil on the ground throughout the yard. She stated that the bottles had liquid in them. The victim called 911 again and asked the dispatcher to send law enforcement back to the victim's house after her discovery of the explosives.

Anthony Mahar testified that he was employed by the Caryville Police Department and that he responded to a call to the victim's home on August 13, 2019 for a suspicious vehicle and possible shots fired. Officer Mahar spoke with the victim who told him of the protective order and provided a description of the Defendant's vehicle. The officer left to patrol the area and spotted the Defendant's vehicle within five minutes. Officer Mahar stopped the Defendant's vehicle. The Defendant denied having been near or at the victim's residence. Officer Maher searched the Defendant's vehicle and found some aluminum foil, which he described as odd triangle shaped pieces roughly two inches big. Officer Maher released the Defendant and returned to the victim's residence, whereupon she showed him the homemade bombs made out of Mountain Dew soda bottles. Officer Maher testified that two of the bottles appeared to have exploded and that there were several pieces of aluminum foil scattered in the yard. One bottle was fizzing but had not exploded yet. Visible inside the bottle were pieces of aluminum foil and other "shrapnel" such as needles, batteries, pennies, thumbtacks, nails, and screws. Officer Maher stated that seeing the bottles and the foil in the yard reminded him of the foil in the Defendant's vehicle.

Officer Maher left the victim's residence and patrolled the area for the Defendant's vehicle. He found the Defendant parked at a restaurant. As Officer Maher pulled adjacent to the Defendant's vehicle, he noticed the Defendant looking through a telescope or a rifle scope towards the victim's residence. Officer Maher activated his blue lights to get the Defendant's attention and asked the Defendant to step out of his vehicle. Officer Maher searched the Defendant's vehicle a second time and recovered the pieces of aluminum foil. One piece of foil lay flat and two other pieces were rolled up into balls, matching the consistency of the ones found in the homemade bottle bombs. Officer Maher found another Mountain Dew soda bottle on the floor of the vehicle containing several small aluminum foil balls. He took all of these items into evidence.

Officer Maher testified that he charged the Defendant with violation of a

3

protective order, based on the information that the Defendant had been in the area of the victim's house in violation of the restrictions in the order. He later charged the Defendant with possession of a prohibited weapon, aggravated stalking, and aggravated assault. Officer Maher explained that the prohibited weapons charge resulted from the homemade explosives. He elected to charge this offense after consulting with the Department of Tobacco and Firearms and the Bureau of Alcohol, Tobacco, Firearms and Explosives as to whether the explosives would fall under any particular criminal statute. Officer Maher stated that he charged the Defendant for the explosives found on the victim's property. He stated that the scope found in the Defendant's possession was used in support of the stalking charge.

The State concluded its proof and the Defendant elected not to testify. The State presented its closing argument, followed by defense counsel. It appears from the record that, at some point during defense counsel's closing argument, a juror requested a break. Outside the presence of the jury, the trial court stated that it wanted both sides to conclude their arguments. The trial court gave defense counsel five minutes to conclude closing argument and gave the State five minutes for rebuttal argument. Neither party objected and both sides presented the remainder of their arguments. Following deliberations, based on the evidence presented, the jury convicted the Defendant of aggravated stalking, aggravated assault, and possession of a prohibited weapon. The jury was unable to reach a verdict as to the remaining count of violation of an order of protection. The trial court imposed a total effective sentence of thirteen years to be served in the Tennessee Department of Correction. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant asserts that the evidence at trial was insufficient to support his conviction for possession of a prohibited weapon and that the trial court erred when it limited his time for closing argument. The State responds that the evidence is sufficient to support the Defendant's conviction and that the trial court did not abuse its discretion when it limited defense counsel's remaining time for closing argument to five minutes. We agree with the State.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his conviction for possession of a prohibited weapon, the soda bottles described as homemade explosives which exploded in the victim's front yard. He contends that there is insufficient evidence to link him to the soda bottles, absent the one found in his vehicle, which did not contain any liquid chemicals. The State responds that the evidence is sufficient from which a jury could conclude that the Defendant had knowingly possessed the homemade explosives found in the victim's yard because a similar bottle and

4

similarly fashioned aluminum foil, present in his vehicle, were used to make the explosives. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this [c]ourt.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted). This standard is identical whether the conviction is predicated on direct or circumstantial evidence. *State v. Casper*, 297 S.W.3d 676, 683 (Tenn. 2009); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977). In the absence of direct evidence, a criminal offense may be established entirely by circumstantial evidence. *State v Majors*, 318 S.W.3d 850, 857 (Tenn. 2010) (citing *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973); *Marable v. State*, 313 S.W.2d 451, 456-58 (1958)).

As applicable here, "a person commits an offense who intentionally or knowingly possesses . . . : an explosive or an explosive weapon[.]" T.C.A. § 39-17-1302(a)(1). An explosive or explosive weapon is: "any explosive, incendiary or poisonous gas: Bomb;" "any breakable container which contains a flammable liquid . . . capable of being ignited;" or "any sealed device containing dry ice or other chemically reactive substances for the purposes of causing an explosion by a chemical reaction." T.C.A. § 39-17-1301(4)(A), (B).

The evidence, viewed in the light most favorable to the State, shows that the Defendant drove to the victim's house in his truck late at night while the victim was sleeping. Soon after, a "boom" was heard by a neighbor. The victim then discovered four soda bottles fashioned into explosives on her front lawn; three of which had already exploded. The explosives were fashioned from Mountain Dew soda bottles and contained shrapnel, including aluminum foil pieces. The victim told law enforcement that the Defendant's vehicle had been outside her home and he was found by law enforcement, twice, in the general area of her home. Law enforcement initiated contact soon after with the Defendant, close in proximity to the victim's residence, and discovered him surveilling the victim's home. A search of his vehicle revealed a fifth Mountain Dew bottle with aluminum foil inside. This is sufficient evidence from which a jury could rationally conclude that the Defendant knowingly and intentionally possessed the explosive devices, defined as prohibited weapons, particularly in light of the similarity of the items found in the Defendant's vehicle to the items found in the victim's yard and used as explosives. The Defendant is not entitled to relief.

**B. Closing Argument**

6

The Defendant next contends that the trial court erred when it limited the time allowed to present his closing argument to the jury. The Defendant contends that the trial court unreasonably limited his closing argument and deprived him of the opportunity to fully present his defense. The State responds that the trial court allowed the Defendant to fully make his case and that limiting the length of the closing argument was a proper exercise of the trial court's discretion that should not be second guessed on appeal. We agree the State.

The record reflects that during defense counsel's closing argument, a juror requested a break and, at that point, the trial court instructed defense counsel to limit the remainder of his argument to five minutes. No objection was made at that time to this instruction. The Defendant raised this issue in his motion for new trial. During the hearing on the motion, the trial court recalled that defense counsel had presented a "lengthy" closing argument which prompted the trial court to give the limitation, outside the presence of the jury. Defense counsel acknowledged his "longwinded" argument, but stated that he was not able to present his argument fully. The trial court stated that the instruction was a "judgment call," which, while "unusual," was within its discretion to promote an "efficient" process and did not entitle the Defendant to a new trial.

We have recognized that closing argument is a valuable privilege for both the State and the defense and have allowed wide latitude to counsel in arguing their cases to the jury. *State v. Bigbee*, 885 S.W.2d 797, 807 (Tenn. 1994). Furthermore, this court has often observed that closing argument is a valuable privilege that should not be unduly restricted. *Id.* at 809. Nonetheless, closing argument is subject to the discretion of the trial judge, and must be temperate, predicated on evidence introduced during the trial, and relevant to the issues being tried. *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994). "The trial court has wide discretion in controlling the course of arguments and will not be reversed absent an abuse of that discretion." *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001).

While no timestamps of the closing arguments have been provided, it appears from the record that counsel for the State and the Defendant both presented closing argument for a comparable amount of time. Defense counsel was afforded the opportunity to spend considerable time summarizing the facts of the case, discussing the victim's and Officer Maher's credibility and inconsistencies, and then laying out the elements of the criminal offenses. After the trial court instructed defense counsel to conclude within five minutes, defense counsel made additional points about Officer Maher's testimony, questioned the security of the crime scene and the evidence collected, and then reiterated the presence of reasonable doubt. Based on this, we conclude that the trial court did not abuse its discretion when it gave defense counsel an instruction to conclude within a time frame and that the Defendant was afforded the opportunity to fully present his closing argument. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE